## FARLEY v. GILMER, ET AL.

1. A bequest to the wife of real and personal property, " during her natural life, and at her decease to be left to my son, A. S. P," vests immediately in the son, as an executory devise.

Error to the Orphans' Court of Montgomery.

THE plaintiff in error, as administrator of Algernon S. Pinkston, having represented the estate insolvent, and citation having issued to the creditors of the estate, they appeared and contested the fact of the insolvency of said estate, and insisted that the inventory submitted by the administrator was incorrect, and an issue being made up and submitted to the court, the following facts appeared:

That the plaintiff in error was administrator both of the estates of Algernon S. Pinkston, and of James Pinkston, his father. That James Pinkston made his last will and testament in 1834, as follows:

1. I give and bequeath to my grandson, James B. Pinkston, a slave named Peter.

2. I give and bequeath to my grand-daughter, Susanna Farley, at the age of eighteen, a slave named Catharine, and her increase.

3. I give, &c. to my grand-daughter, Eustatia Farley, a slave named Levin.

4. To my daughter Thurmutis Farley, the N. E. quarter of section 29, township 16, range 19; a slave named Tom; also a note of J. C. Farley, now in the State Bank, for $750, due the first of January, 1832; also $1500, as soon as it can be realized out of my estate, after paying my just debts.

5. I give, &c. to my wife, Gilly Pinkston, the balance of my property, both real and personal, consisting of lands and negroes, horses, mules, hogs, cattle, farming utensils, household and kitchen furniture, tan-yard and stock, during her natural life, and at her decease, to be left to my son, Algernon S. Pinkston.

6. It is my wish, that the land I now own, near Foreman's mill, be sold to pay my just debts.

After the appointment of executors, is this clause: "I have settled with my son, Lucien Pinkston, and Jona C. Farley, on his marriage with my daughter Eustatia. The will was attested by but two witnesses.

It was in proof, that a considerable amount of real and personal property went into possession of the widow after the payment of the debts. That Algernon was a minor at the death of his father, and died before his mother, leaving a widow, but no children. After the death of the widow of James Pinkston, the plaintiff in error, as his administrator, claimed the property she had received under the will of her husband, as belonging to his estate, and the question before the court was, whether it was a part of the estate of James Pinkston, or of his son Algernon, and the court decided that the personal property did pass under the will of James Pinkston to his son, and vest in him, and that on the death of the tenant for life, it passed to his personal representative. To which the plaintiff excepted, and which is the matter now assigned as error.

BELSER, for plaintiff in error, contended, that the bequest was clearly contingent, and that it was the duty of the court to give effect to it. He cited McLeod v. McDonnell, 6 Ala. 238; McLemore v. McLemore, 8 Id. 689; Richardson v. Wheatland, 7 Met. 171; Inglis v. Snugharbor, 3 Peters, 117; Olney v. Hall, 21 Pick. 311; McRae v. Alston, 2 Dess. 368; Gregg v. Bethea, 6 Porter, 10; Marr v. McCullough, 6

Id. 689; Dingley v. Dingley, 5 Mass. 537; Danney v. Allen, 1 Pick. 147; White v. Woodly, 9 Id. 138; Emerson v. Cutler, 14 Id. 115; Moore v. Smith, 9 Watts, 408; Bulsford v. Kibbel, 3 Vesey, 362; Billingsley v. Miles, 3 Atk. 219; Luke v. Robinson, 3 Merivale, 363; Cripps v. Wolcot, 4 Madd. 11; Pope v. Whitcombe, 3 Russell, 124; Marsh v. Wheeler, 2 Edwards, 156; Harris v. Fly, 7 Paige, 421; Cave v. Cave, 2 Vernon, 508; Hanson v. Graham, 6 Vesey, 239; Paterson v. Ellis, 11 Wend. 259.

ELMORE, contra.

ORMOND, J.—The question to be determined, upon the fifth clause of the will, is, whether the interest vested in the son immediately, at the death of his father, to be enjoyed after the death of his mother, or, whether his right to the property depended upon the contingency of his surviving his mother.

We think it does not admit of reasonable doubt, that it was intended the estate should vest immediately in the son, as an executory devise. This is a question of intention, to be gathered from the language employed in the particular bequest, subject to be controlled by other parts of the will, showing a contrary intention. There is nothing in the language employed in this case, indicative of an intention to postpone the vesting of this legacy, until the death of the tenant for life. "At her decease, to be left to my son," &c. is equivalent to saying, at her decease, I give the estate to my son, or remainder to my son, which would clearly give a vested interest in the remainder.

The general rule is in favor of the vesting of legacies, and this rule will prevail, unless a clear intention is shown on the will, that it shall not vest until the happening of the contingency; and in the language of Lord Eldon, in Gaskell v. Harman, 11 Vesey, 498, the court will not conjecture in favor of an intention, against the general rule.

This question generally arises in money bequests, payable at a future period, and the legacy will vest immediately, or be contingent, according as the intention is ascertained to be, to make an immediate gift, and to postpone the enjoyment

for a particular period, or until the happening of some future event, and, where there is no gift, distinct from the time of payment. [Fonnerean v. Fonnerean, 3 Atk. 645; Jackson v. Jackson, 1 Vesey, sr. 217; and see the cases collected on this head in Roper on Legacies, 375.]

But these rules, applicable to money legacies, have no application when the same words are applied to à devise of freehold estate. A devise of freehold estate to A, *when* he shall attain twenty-one years, will vest immediately in A, whether the devise be immediate, or only in remainder— [Doe v. Moore, 14 East, 601; Mackin v. Reynolds, 3 Brod. & Bing. 121]—although the same language, applied to a money legacy, would not create a vested interest, until the contingency happened. The intention of the testator here, was to convey his lands to his son, and although that has failed from the want of the necessary number of witnesses, it is nevertheless clearly indicative of his intention.

This intention, so far from being controlled by the residue of the will, is strongly confirmed by it. We find him leaving specific legacies to the rest of his children, for whom he had not previously provided, and no doubt can be entertained, that he did not intend to die intestate, as to any portion of his property, although from the defective execution of the will, it became inoperative to convey the lands. [McLemore v. McLemore, 8 Ala. 687; McLeod v. McDaniel and wife, 6 Id. 236.]

The decree of the orphans' court must be affirmed.