SAVAGE, ADM'X, *vs.* BENHAM, ADM'R, ET ALS.

1. Where an executor, who is one of the residuary legatees under the will, converts assets of the estate, removes from the state without making a settlement, and is, together with his sureties, wholly insolvent, a bill filed by another of the legatees against him and the administrator *de bonis non*, praying an account and settlement of their respective administrations, and an application of the legacy due to the executor, or so much thereof as may be necessary, to make good his default, is not multifarious.

2. Where the jurisdiction of the Orphans' Court in the grant of administration has rightfully attached, its action is not void, and a court of

chancery cannot, in a collateral proceeding, go behind it for the purpose of enquiring whether the letters were properly or improperly granted.

3. A testator, after providing for his wife, makes the following bequest: "It is my will and intention to give and bequeath the residue of my estate, both real and personal, in the manner and form hereinafter specified, to-wit, to my dear children, and to my grand-children as follows: to my daughter B. D." &c. He then directs his executors to keep his estate together until the death of his wife, and to give his younger children, when they respectively reach the age of twenty-one or marry, as much property as he had advanced to his other children on their marriage or majority—to make annual divisions of the proceeds of the crops, after deducting what may be necessary for the support of his wife and the support and education of his younger children, among his children who are married or of full age, to be accounted for by them on the final division, and on such final division to "reimburse" the younger children, who have not received the benefit of these dividends, "their proportion with interest"—and upon the death of his wife, to divide all the property equally among his children and grand-children in the manner already provided, &c. Held—

1. That the legacies vested at the testator's death, although their full enjoyment was postponed until the death of his wife.

2 That in taking the account on a final division the younger children respectively, or their representatives, are entitled to an allowance for such necessary expenses as they have actually paid or become liable to pay for their support and education during minority, or before their marriage.

4. It is not enough that a defendant answers the charges of the bill literally: He must go further and confess or traverse the substance of each. But a general denial of a material allegation, although it might be held insufficient, if excepted to, cannot be regarded because of its insufficiency, as an admission of the truth of the allegation.

5. Where the husband of a legatee receives money from the executor, not as an advance on the legacy, but under a contract to refund it, the wife's equity remains unimpaired, and until a suitable settlement is made on her, the legacy cannot be appropriated to the payment of the debt.

Error to the Chancery Court of Lauderdale.    Tried before the Hon. David G. Ligon.

THE bill in this case was filed by the plaintiff in error, as administratrix on the estate of Samuel G. Savage, deceased, against George M. Savage, the executor appointed by the will of Samuel Savage, deceased, Vincent M. Benham, the administrator *de bonis non* with the will annexed, and the various residuary legatees under said will.    It alleges that the intestate

Savage, adm'x, v. Benham, adm'r, et als.

of the plaintiff was entitled by the provisions of said will to a vested residuary legacy, which he never received, and to a support, education, &c. during his minority, which was not afforded him, and that she as his personal representative is entitled to said legacy and to such amount as her intestate expended out of his own means, or became liable for personally, in procuring his support and education. It further alleges the removal of the said George M. Savage from his office as executor and from the State, his conversion of the assets of the estate to an amount greater than the residuary legacy given him by the will, his insolvency and that of his sureties, the division of the annual proceeds of the estate between said George M. and Henry Dillahunty, the husband of Bethaland Dillahunty, one of the legatees, to a large amount, whereby said Henry Dillahunty has received an advancement in right of his wife to the extent of $7000, and a fraudulent change by them of the character of this transaction from an advancement to a debt of the said Henry Dillahunty, for which he had confessed a judgment. The clauses of the will and such other facts, contained in the record, as are necessary to be understood, will be found incorporated in the opinion. The chancellor decreed against the plaintiff, on the following grounds:

1. Because the bill is multifarious.

2. Because the complainant at the time administration was granted to her, was a minor, and the grant of administration void.

3. Because the legacy to complainant's intestate was contingent, not vested, and the contingency on which it was to vest had not happened.

Wm. Cooper, L. P. Walker and Elmore, for plaintiff:

1. The bill is not multifarious.

I. The doctrine on this subject is a rule of convenience and justice, and each case is governed by its own circumstances, the courts discouraging the objection when it would defeat and not advance the ends of justice.—Chapman v. Chum, 5 Ala. 397; Kennedy's Heirs v. Kennedy, 2 Ala. 571 ; see 20, 21, 22, 23 points of head-notes.

2. The complainant's case against the estate, the legatees and personal representatives, is entire. The whole estate is

the subject matter of the suit; the legatees are all interested, and each of the representatives, Savage and Benham, is interested in separate parts at least of the estate and of the complainant's demand; and when all the parties and the subject matter are before the court, it will settle all the equities at once, rather than by piece meal.—Kennedy v. Kennedy, 2 Ala. 571; Chapman v. Chum, 5 Ala. 397; P. & M. Bank v. Walker et al., 7 Ala. 926; Toulmin v. Hamilton, 7 Ala. 362; Donalson v. Posey, 13 Ala. 752; Att'y Gen'l v. Corporation, 4 Myl. & Cr. 17; Att'y Gen'l v. Craddock, 5 Myl. & Cr. 85; Turner v. Robinson, 1 Sim. & Stu. 313; Governor v. McEwen, 5 Hum. 241; Leavens v. Butler, 8 Porter, 380; Story's Eq. Plead. 3 ed. n. 1; sec. 170; Story's Eq. Plead. sec. 271 a., 278 a., 284-285 a.; Calvert on Parties, 7, 70; Cooper's Eq. Plead. 33.

3. The letters of administration granted to the plaintiff in error cannot be collaterally impeached. Her right to sue could only be defeated by proving some fact rendering the letters void *ab initio*, and nothing short of a want of jurisdiction in the court would be sufficient for this purpose.—Kane v. Paul, 14 Peters, 33, 41-42; Hyman v. Gaskins, 5 Iredell, 267; Boyett v. Kerr, 7 Ala. 9; Speight v. Knight, 11 Ala. 461; Spencer v. Cahoon, 4 Dev. 225; Gilchrist v. Williams, 1 B. Mon. 133; Tarver v. Tarver, 9 Peters, 180; Johnson v. Glasscock, 2 Ala. 233; Wyman v. Campbell, 6 Port., 219; Hilliard v. Buford's Heirs, 10 Ala. 977; Herbert v. Hanrick, present term of court; 2 Greenl. Ev., § 339-340, p. 272; 1 Lomax on Ex'rs, 187-188-190; 1 Williams on Ex'rs, 344; 2 Phillips on Ev. 550-551.

4. As to legacies, whether vested or contingent.

I. Courts do not favor an intestacy of a residue.—Lake v. Robinson, 2 Merivale, 385; Booth v. Booth, 4 Vesey, 406; Farley v. Gilmer, 12 Ala. 141.

II. Legacies are contingent if given "when" or "if," or "at," but if given generally and are to be *advanced* or *divided off*, or *apportioned*, or *paid* "when" a particular event happens, or "at" a particular time, or if the *interest is directed to be paid*, or *to be invested*, then the legacies are vested. They are given at once to be paid *in futuro*. The payment depends on the contingency, not the right to the legacy; that is fixed and absolute at the death of the testator.—Dawson v. Killett, 1 Brown Ch. 123; Hanson v. Graham, 6 Vesey, 243; Reeves v. Brymer,

4 Vesey, 698; Marr's Ex'rs v. McCullough, 6 Porter, 507; Brodnax v. Sims' Ex'rs, 8 Ala. 499; Barnes v. Allen, 1 Brown Ch. 181; Devisme v. Mello, 1 Brown Ch. 537; Knight v. Wall, 2 Dev. & Bat. Law, 125; Pitts v. Custis, 4 Ala. 350; Patterson v. Hawkins, 12 Ser. & R. 112; Hogan v. Bell, 4 S. & P. 312; Farley v. Gilmer, 12 Ala. 141; McLemore v. McLemore, 8 Ala. 687; McLeod v. McDonald, 6 Ala. 236; 1 Jarman on Wills, (top page,) 426-733-737; Word on Legacies, 173.

5. The intestate, having paid or incurred liability for his support and education, his personal representative is entitled to receive such sum as he so expended, from the estate.—4 Mass. 634.

6. The denial of Dillahunty and wife is special and specious, and must be taken as an admission of the allegations against them.—Kirkman v. Vanlier, 7 Ala. 217; 8 ib. 78.

ORMOND, for defendants:

1. The legacies given by the eleventh clause of the will did not vest until the death of the widow. This is shown by the fact that there is *no gift but in the direction to divide the property among the children at the death of the widow.* This is the distinction which pervades all the cases, and which ascertains whether the legacy is vested or contingent.—1 Roper on Legacies, 383-91-'2; 1 Jarman on Wills, 760-'2, 774, in note; Grigg v. Bethea, 6 Porter, 9; Marr v. McCullough, ib. 507; Leake v. Robinson, 2 Meriv. 363; Livesay v. Livesay, 3 Russell, 287; Ford v. Rawlins, 1 S. & S. 328; 1 Con. Eng. C. 167; Vawdry v. Geddes, 1 R. & M. 203; 4 Eng. Con. C. 389; Judd v. Judd, 3 Sim. 525; 5 Eng. C. C. 232; 2 Williams on Ex'rs, 887-892. There is no gift to Samuel G. Savage in the third clause of the will, but an intention merely expressed to give " in the manner hereinafter specified."—See also the case of Packham v. Gregory, 30 Eng. Ch. 395, which though apparently in conflict is not so in reality.

2. The fact that this is a *residuary* bequest does not change the rule. The case of Booth v. Booth, 4 Vesey, 399, seems to have been determined upon this ground to have been an absolute gift. But see the criticism of Sir W. Grant on this case, in Leake v. Robinson, *supra,* and Vawdry v. Geddes, 1 R. & M. 203.

3. The fact that interest upon the legacy is given is not con-

clusive in favor of the vesting of the legacy.—See the cases cited in the previous note. The gift of a maintenance out of the fund is not equivalent to the gift of interest on the fund.—Pulsford v. Hunter, 3 B. C. C. 416; Batsford v. Kibbell, 3 Vesey, 363.

4. When the effect of a bequest is to sever the bequest from the estate for the purpose of paying interest, the legacy will vest, though the time of payment is postponed.—Saunders v. Vanlier, 1 Craig. & Philips, 240, 18 Eng. C.; Lister v. Bradley, 1 Hare, 14. There is no such severance here.

5. The entire will establishes conclusively that the testator regarded his children and grand-children as the sole beneficiaries under the will and cautiously guards against the contingency of any portion of his estate going to strangers. See especially the 3d, 7th, 8th, 10th and 11th clauses.

6. The intestate, S. G. Savage, was in fact maintained by the executors, during his minority, as is fully shown by the answer, but if he was not, no right can result to his personal representatives from such omission.—Boyett v. Kerr, 7 Ala. 9. As the estate was to be kept together and the widow and children supported until her death, it is self-evident that all the estate not expended would be the fund to be divided. There could not from the nature of the will be an intestacy.

7. The executors had unlimited discretion as to expenditures to be made during the minority of the children, or payments made to them on their coming of age, so as to make them equal with the elder children under the fourth clause of the will. In point of fact, when Samuel Savage came of age. a law suit was depending against the estate which if successful would have swept away the entire estate. The executors therefore were not only authorised but it was their duty to retain the estate in their hands. But if the executors improperly exercised their discretion, no advantage could be taken of it after the death of the legatee. That the chancellor will not control the exercise of a pure discretion—see Hill on Trustees, 70; 2 Vesey, 640; 5 ib. 849.

8. It is a strong circumstance to show that the legacies did not vest until the event happened, that the children were to be supported in the mean time from the estate at large.

9. The bill is clearly multifarious in uniting a claim against the executor and administrator *de bonis non.*

10. An infant cannot be an administrator.—4 Johns. Ch. R. 549; 4 Bacon Ab. 17.

CHILTON, J.—Three points arise on the record before us: 1. Is the bill multifarious? 2. Has the complainant a right to sue, being at the time of her appointment as administratrix an infant? 3. Whether the legacy given to her intestate by the will of Samuel Savage vested so as to entitle her, as his administratrix, to recover it from the present personal representative of the testator's estate? We will briefly examine these in the order in which they are stated, as well as some collateral questions as to the mode of taking the account.

1. It is insisted that the bill is multifarious because the complainant unites a claim against Benham, the administrator *de bonis non*, with one against George M. Savage, who was the executor of the estate: That Benham has no interest in the litigation between the complainant and the executor. The bill was filed by the complainant to recover the share to which her late husband was entitled under the will of his father. To arrive at that share it is necessary to ascertain the residuum of the estate, after deducting the payments for the debts and the expenses and losses of the estate. George M. Savage was the executor and also one of the residuary legatees; as executor he took charge of the estate, and afterwards absconded, taking with him nine negroes and other property, amounting, as is alleged in the bill, to seven thousand dollars. It is further alleged that he has gone without the limits of this State—is insolvent, as are also all the securities upon his bond as executor, and that he has made no settlement of his executorship with the Orphans' Court. It is therefore prayed that the share to which he might otherwise be entitled in the estate be appropriated by the court to make good his default. It will be seen from this statement that in order to effect a full settlement of the estate it was indispensable that an account should be taken with Savage, the executor, in order to ascertain the amount of his defalcation or waste, and to repair it so far as the share to which he is entitled under the will is sufficient to do so. We think therefore he was very properly made a party, both in his capacity as executor and legatee. It would be contrary to the plainest dictates of equity to permit him to share one seventh of the residuum, when at

the same time both he and his sureties upon the bond, which he executed for the security of the estate, are insolvent and he is indebted to the estate for a waste or conversion of the assets to a larger sum, which he fails to pay over or account for.—Tuscumbia, Courtland and Decatur Rail Road Co. v. Rhodes, 8 Ala. Rep. 206-226; Donalson's Ex'r v. Pope & Posey, 13 Ala. Rep. 752-770. To make this application of the legacy of George M. Savage, it was necessary that the account prayed for should be taken, and hence, as we have said, he was properly made a party.—See the case last cited and the authorities there refered to, as well as the authorities on the brief of the counsel for the plaintiff in error; also Mobile and Cedar Point Rail Road v. Talman, Ralston & Co. 15 Ala. Rep. 472; Hunley et al. v. Hunley, ib. 91.

2. By our statutes the Orphans' Courts have full jurisdiction over the subject of granting letters of administration, and of all testamentary and other matters pertaining to an Orphans' Court, or court of probate.—Clay's Dig. 300, § 21; 301, § 25. By the 20th sec. of the act of 1806, the widow or next of kin to the intestate, or some of them, are entitled to the administration, and nothing is said in the statute as to her age; but we concede that although the act is silent, yet it would be improper for the Orphans' Court to appoint her unless she had attained her majority, so as to execute a bond which she could not avoid. This, however, is not the question before us. Is such appointment, when made according to the forms which the law prescribes, void, and can it be so declared in this collateral mode of proceeding? We are clearly of opinion that her appointment at most was only voidable, and that having consented to the appointment and fully ratified it since she has come of age, by filing her bill and proceeding in the course of administration upon the effects of her deceased husband, she could not set up her infancy to avoid the grant of administration or her liability upon her bond.—Reeves' Domestic Rel. 240; Richardson v. Boright, 9 Verm. Rep. 368; 11 Serg. & Rawle, 305; 7 Watts, 412; 5 Yerg. Rep. 61; 2 Term Rep. 426. As then her intestate's estate has the security of a good bond, and she produces her letters of administration granted by a court of competent jurisdiction, is of full age and insists upon her rights as confered by said letters, it does not lie with the defendants to say she should

not recover because there was a time when she could have avoided the bond. But we think it clear the Court of Chancery should not go behind the letters and retry the question of the complainant's infancy at the time the letters were granted : For I take it, that the Orphans' Court in the grant of the letters must be presumed properly to have investigated and correctly to have decided all questions proper to be determined as pre-requisites to the grant of administration, it appearing that its jurisdiction rightfully attached.—2 Greenl. Ev. § 339; ib. § 340.

3. We proceed next to notice the remaining question as to whether the legacy claimed by the bill was vested or contingent, and here we may remark, that we previously had occasion to examine this question, in the case of Goodman, Ex'r, v. Benham, Adm'r, 16 Ala. 625, and then arrived at the conclusion that the legacy was vested. We held up the opinion, however, in that case, that the question might be re-argued. The point has been fully discussed in this case, and we see no reason to doubt the correctness of our first conclusion. The law is said to favor the vesting of estates, and in cases where the intention of the testator, to be gathered from the whole will, is doubtful, that construction should be adopted which is profitable to the devisee, not to his prejudice.—Bacon's Abr., Wills, g. ; 1 Jarman on Wills, 726-'7. So when there is a doubt, vested rather than contingent remainders are favored.—4 Pick. Rep. 198; 2 ib. 468; 21 ib. 312; 5 Mass. Rep. 535; 10 Bacon's Abr. (Bouvier's ed.) 540; 1 Roper on Leg. 389. So, also, courts do not favor intestacy as to the residue of an estate.—Lake v. Robinson, 2 Merrivale, 385. The rule which favors the vesting of legacies will prevail, unless a clear intention is shown on the will that it shall not vest until the happening of the contingency, and it is said "the court will not conjecture in favor of an intention against the general rule."—Gaskell v. Harman, 11 Ves. 498; Farley v. Gilmer, 12 Ala. Rep. 141; Marr's Ex'r v. McCullough, Adm'r, 6 Por. Rep. 507. These general rules can do but little more than aid us in arriving at the intention of the testator, for in all cases that intention, to be gathered from the whole will, must be, if lawful, the law for the court in giving effect to the will. We think it sufficiently appears from an examination and careful analysis of the whole will, that it was the intention of the testator to provide against intestacy in respect to

any portion of the residuum of his estate.   After making a pro-
vision for his wife in the second item of the will, he proceeds in
the third to dispose of the residue as follows:  " It is my will
and intention to give and bequeath the residue of my estate,
both real and personal, in the manner and form hereinafter spe-
cified, to-wit—To my dear · children, Bethaland Dillahunty,
Wm. F. T. Savage, George M. Savage, Samuel G. Savage,
John Tacitus Savage, and to my grand-children hereinafter
mentioned, as follows,—To my daughter, Bethaland Dilla-
hunty, I bequeath the property already advanced to her as her
marriage portion—To my son-in-law, John B. Dillahunty, I
give and bequeath the personal property heretofore advanced to
him," &c.   The testator then provides that in the future and
final disposition of his estate as afterwards directed, the advances
already made to any of his children (and which he had charged
in a book with the prices annexed) shall be deducted from the
portion of the child or grand-child so advanced.   By the fourth
item, he directs his estate to be kept together, and the plantation
to be kept up until the death of his wife, Ann R. Savage, and
when his younger children arrive at the age of twenty-one, he
directs his executors to give them as much property as he had
advanced to his other children upon their marriage or majority.
The fifth item provides for the annual division of the proceeds of
the crops (deducting what is necessary for the support of his
wife and sons, Samuel G. and John Tacitus,) between his chil-
dren who are married or are of full age, to be accounted for by
them on the final division, and the younger children who may
not have received the benefit of these dividends, shall be reim-
bursed their proportion, *with interest*, on the final division.
The sixth provides for the professional education of S. G. and
J. T. Savage out of his estate, which is not to be deducted
from their shares on final division.   The eleventh item provides
that " upon the death of Ann R. Savage, wife of testator, that
all the property of every kind, both real and personal, then in
the hands of the executors, shall be equally divided between
testator's children and grand-children, in the mode already pro-
vided, one seventh to Samuel G. Savage," &c.   We are clear
in the opinion that the intention of the testator was to vest the
interest immediately upon his death, when the will would take
effect, but to postpone the enjoyment or possession until after

the death of Ann R. Savage. The third item we think vests the legacy—the eleventh item shows the time when it shall be enjoyed. We think this idea pervades the whole will. Equality as to the distribution of his estate between all his children seems to have been the testator's leading object, and such portions of his estate as well might be distributed without crippling the operations of the farm, he orders to be annually divided, which portions so divided are to be taken into the account upon final distribution, the shares of the younger children in the profits of the estate to bear interest until enjoyed by them. But they were entitled to their dividend if they married or came of age, although Ann R. Savage was in life: Thus showing that their interest vested and that a portion could be realised before the happening of the event, which according to the construction contended for by the counsel for the defendants in error, the gift was to attach. It is unnecessary, however, to dwell longer upon this point, as we repeat that from an examination of the will and the language employed, we believe we should do violence to the intention of the testator as well as run counter to established precedents to hold this a contingent, not a vested legacy.

We might here close this opinion, but as in all probability the case may return unless the other questions raised are decided, we proceed briefly to state the law as applicable to them, and which will guide the chancellor and the register in the further proceedings to be had in the cause.

As to the legacy left to William F. T. Savage, if he was dead at the time of the death of the testator, express provision is made in the will that his portion, to be ascertained in the mode therein prescribed, shall be divided among the children and grand-children of the testator, in the same manner as is expressed in respect of the other properly bequeathed them. It is plain then, that if he was dead when the will was made or when the testator died, the complainant's intestate was entitled to his proportion of the share so bequeathed. This point was decided by us in the case of Goodman, Ex'r, v. Benham, Adm'r, above cited.

1. The fifth item of the will requires the executors to divide between the children who are married or are of full age the net proceeds of the crops to be realized by the executors, after de-

ducting what is necessary for the support of the testator's wife, as provided for in the second item, " and for the support, boarding and schooling of his younger sons, Samuel G. and Tacitus." And it is provided by the sixth item, that if either of the latter should conclude to study professions, the executors are to pay the expenses thus incurred, "to be deemed a part of their education, for which my estate generally is to be made chargeable, and not their portions or distributive shares of the same." The testator also provides that upon the final division of his estate, the younger children who may not have had the benefit of such annual dividends to be made by the executors of the proceeds of the crop are to be re-imbursed their proportion with lawful interest. Now we think it results from the foregoing extracts that it was the intention of the testator that his two younger children, of whom the plaintiff's intestate was one, should be supported and educated out of the estate, or rather out of the profits accruing upon the farm, &c.; and that such necessary expenses as were actually incurred in the support and education of said intestate should constitute a valid demand against the estate.— Whether these expenses have actually been paid, or remain to be paid by the plaintiff as administratrix of said Samuel G., makes no difference. The will provides for their payment out of the estate, and the executor is not the less bound to pay the expenses necessarily incurred, because the party for whose benefit they were appropriated is dead. In taking the account it will be proper to ascertain what sums have been paid by the intestate, or remain to be paid by his administratrix for his necessary support and his education, before his marriage or arrival at the age of twenty-one. The bill does not aver that the expenses were incurred in studying a profession under the sixth item. Had such been the case, we apprehend the executor should be required to pay for such, though incurred after marriage, or after the party had attained his age of majority, since the will provides for such payment irrespective of the age when the party may study the profession. But the plaintiff cannot recover for such sums as might well have been expended in education, &c., but which were not so expended. Only the actual necessary and proper expenses should constitute a charge against the estate, before the surplus is divided.

2. As to the dealing between the executor and Dillahunty,

by which the latter fell in debt to the estate, and for which indebtedness he confessed judgment, a portion only of which has been paid, we need only remark, that he (Dillahunty) denies all fraud in the matter of the receipt of the money and confession of the judgment—denies that any division of the proceeds of the crops was ever made on account of the litigation in which the estate was involved, and denies that he received any sums of money from George M. Savage as executor in right of his wife, or in his character as husband of his said wife, the receipts for which were fraudulently transferred into a debt, as is charged in the bill. It is insisted by the counsel for the plaintiff in error, that the answer of Dillahunty is insufficient and evasive, and the allegation of the bill charging him with the receipt from the executor of $7,000 on account of the legacy to his wife, the proceeds of the crops under the fifth and ninth clauses of the will, should be considered admitted. Conceding the general principle that where a fact is alleged which *prima facie* is within the knowledge of the defendant, and which he fails to answer, it must be regarded as admitted by him, so far as to dispense with proof by complainant to establish its truth, as the same is asserted in Kirkman v. Vanlier, (7 Ala. Rep. 217,) yet we do not think it applies to the case before us. Here the defendant denies the allegation of the bill that any division was made of the net proceeds of the crops, and adopting the language of the bill, negatives the charge as to the receipt of the money, as we have above stated. That such an answer is objectionable as insufficient there is no doubt, and had the plaintiff excepted to it, the exception should have been sustained. It is not sufficient that an answer contains a general denial of the matters charged; there must be an answer to the inquiries upon the general subject. The defendant must speak directly and without evasion—must not only answer the charges literally, but must confess or traverse the substance of each charge.—Story's Eq. Pl. § 852, n 3. So also, if the defendant deny a fact, he must traverse it directly, and not by way of negative pregnant; if the fact charged in the bill be stated to be done under divers circumstances, the defendant may not traverse it literally as laid in the bill, but he must traverse the point of substance.—Danl. Ch. Pr. 835. It was not sufficient then for this defendant to deny " that he received any sum of money from the said George M. Savage as executor of the said

Samuel Savage, in right of his wife, or in his character as husband of his said wife, the receipts for which were fraudulently transferred into a debt, as is falsely charged by the bill; nor was the judgment mentioned by the complainant fraudulently confessed." In Wharton v. Wharton, 1 S. & S. 235, (S. C. 1 Cond. Eng. C. Rep. 117,) Sir John Leach, V. C., said, "It is true that the general answer in this case includes in it an answer to the particular inquiry. But such a mode of answering may in some cases be resorted to in order to escape from material discovery; and it is safer to adhere in all cases to the general rule that particular cases must be answered particularly and precisely." So in Woods v. Morrell et al., 1 Johns. Ch. Rep. 103-107, it was held that particular and precise charges must be answered particularly and precisely, and not generally, although the general answer may amount to a full denial. These authorities and many others which might be added show that the answer of Dillahunty is insufficient, although it amounts to a general denial of the charge in the bill. But while it would entitle the complainant to her exception, it cannot we think be regarded as an admission of the allegation. Not having been excepted to, its effect is to put the complainant to proof of the allegation in her bill, but does not require the same amount of proof.—McGehee v. Goodwin, 15 Ala. Rep. 232; Waters v. Creagh, 4 Stew. & Por. 410; Wilkins v. Woodfin, 5 Munf. Rep. 183; Danl. Ch. Pr. 984, and notes. We do not think that the record before us warrants the conclusion that Dillahunty received the money for which he confessed judgment to the executor in payment or on account of his wife's legacy, but it is pretty clear on the other hand, that he received it under a contract to refund it to the executor, as is evidenced by the confession of the judgment and a re-payment of a portion of said indebtedness. He then occupies the relation of a judgment debtor to the executor for effects of the estate received by him. Such being the case, the equity of the wife remains unimpaired, for the husband's marital rights have never attached to the fund. He has not dealt with the executor as husband, with the view of binding the wife's estate.— Her rights in respect of the legacy remain unaffected by the husband's conduct. What are her rights as against her husband, or his creditors? Were the husband seeking the aid of the court to reduce the legacy into possession, it is well settled that

the court would require him to make a suitable settlement upon the wife. It is further the settled doctrine that the wife may resort to a court of chancery to have such settlement decreed her out of her equitable estate.—Atherly on Mar. Set. 345; Murray v. Lord Elibank, 5 Ves. 737; Carr v. Taylor, 10 ib. 574. And it is said that to obtain her the aid of the court, it is not necessary that she should file a bill, for the court will grant her its assistance merely upon her petition.—Atherly, 345; 1 Atk. 192; ib. 280; see also as to the right to a settlement, 2 Kent's Com. 139-40; Kenney v. Udall, 5 Johns. C. Rep. 464; and Danl. C. Pr. 141-2, as to the form of the order. Neither can the creditor of the husband resort successfully to a court of equity to subject the legacy of the wife to the payment of the husband's debts, where they have joined in a voluntary conveyance to another.—Andrews & Bros. v. Jones, 10 Ala. Rep. 400, and authorities there cited. So in a suit by husband and wife for the legacy of the latter, it was held that the executor cannot plead a debt due from the husband to the executor.—Per Sir William Grant, in Carr v. Taylor, 10 Ves. 574.

These authorities may suffice to show that the husband never having reduced the legacy into possession, the wife's equity to a suitable settlement out of her share of the estate is not to be considered as affected by reason of his indebtedness to the executor.

Perhaps we have no need to go farther into the questions presented, as the principles above educed will be sufficient for the guidance and future disposition of the cause. If a balance remains after making a suitable settlement on the wife, it should not go to Dillahunty, but be appropriated in discharge *pro tanto* of his indebtedness to the estate.

Let the decree of the Chancery Court be reversed and the cause remanded, that a reference may be awarded, and a decree pronounced in accordance with the views here expressed.

Let the defendants pay the costs of this court.

PARSONS, J., not sitting.