28   494
116   271

28   494
e139  618

## TRAVIS *vs.* MORRISON AND WIFE.

[PETITION BY ADMINISTRATOR FOR DIVISION OF SLAVES—CONSTRUCTION OF WILL.]

1. *Admissibility of parol evidence in construing will.*—In construing a will, it is permissible to look at the condition of the testator's family.
2. *Bequests construed, and held contingent.*—Testator directed his executors to keep together the entire estate, to cultivate the plantation with the slaves, and to apply the proceeds of the crops to the support of his family and the education of his children, and gave them power to sell property, and to manage the estate as they thought would be most conducive to the interests of the estate. The will contained, in addition to a specific bequest of three slaves to one daughter, the following clauses: "It is my further will and desire, that in the event of the marriage of my wife, or of either of my daughters, or of the child with which my wife is now pregnant, or of either of my children arriving at the age of twenty-one years, then my said executors shall have a division of all my property, both real and personal, and of whatever kind it may consist, and assign and give to my said wife, or my said children, when they shall marry or arrive at age as aforesaid, a child's part of said estate, which I give to them and their heirs forever." " In explanation of the foregoing bequest as to my plantation, it is my will and desire, that in the event of my wife's marriage, or of the marriage of any one of my children, or of any one of them arriving at age as aforesaid, that my property be then equally divided among them, giving each one, as before stated, a child's part of the same, and that the plantation be still managed and kept up by my said executors, for the benefit of my other children." The testator's family consisted of his wife and two daughters, one of whom was born of a former marriage. *Held,* that the legacies were contingent, and that therefore only those legatees who were living at the happening of the contingency on which the division was to take place were entitled to share in the estate.

APPEAL from the Court of Probate of Sumter.

The will of Enoch Travis, which was admitted to probate in Sumter county, in April, 1841, contained the following provisions:

"In the first place, it is my will and desire, that my plantation in Sumter county whereon I now reside, containing about eight hundred and ninety-seven acres, and all of my negroes on said plantation, consisting of about thirty-five in number, with all of my stock, consisting of horses, cattle, hogs, sheep, oxen, and all of the household furniture and farming

utensils of every kind and description, be managed and controlled, kept up and continued in cultivation and good order, by my executors, to be hereafter nominated and appointed; and from the proceeds of the crops, and the profits and increase of the said plantation, negroes, &c., it is my will and desire, that my family be comfortably supported, and my children decently educated; and the more fully to carry into effect these my wishes, I give my executors full power and authority to manage the same as they think best calculated to advance the interest of the estate, and from time to time to sell such property, and to make additions to the same, as they, in their opinion, may deem most advantageous.

"It is my further will and desire, that, in the event of the marriage of my wife, Harriet E., or of either of my daughters, or of the child with which my wife is now pregnant, or upon either of my said children arriving at the age of twenty-one years, then my said executors shall have a division of all my property, both real and personal, and of whatever kind it may consist, and assign and give to my said wife, or my said children when they shall marry or arrive at age aforesaid, a child's part of my said estate, which I give to them and their heirs forever.

"Is is my further will and desire, that the other real estate I own," [which is here particularly described as consisting of an undivided half of a quarter-section of land lying in Kemper county, Mississippi, a tract of eighty acres lying in Tuskaloosa county, and a city lot in Mobile,] "be all kept, managed, improved, rented or sold by my said executors, as they, in the exercise of sound discretion, may think most conducive to the interest of my estate; hereby giving and clothing my said executors with full powers to manage or sell the same, as if the property was their own. .

"In explanation of the foregoing bequest as to my plantation, it is my will and desire, that in the event of my wife's marriage, or of the marriage of any one of my children, or of any one of them arriving at age as aforesaid, that my property be then equally divided among them, giving each one, as before stated, a child's part of the same, and that the plantation be still managed and kept up for the benefit of my other children,

"It is my will and desire, that of the negroes now in my possession, that Harriet, about eighteen years of age, Fanny, about ten years of age, and the child of Harriet, be not included in the foregoing bequests; but the said negroes, with all of their increase, are hereby given and bequeathed to my daughter, Mildred T. G. Travis, to her and her heirs forever.

"It is my further will and desire, that my brother, Amos Travis, in consideration of the trouble and labor and attention he must bestow upon the management of my property, and the execution of this my will and testament, be allowed the sum of $1,600; the said amount to be credited, in equal proportions, upon three notes of his which I now hold, falling due the first of January, 1841, '42, and '43.

"I do hereby nominate and appoint my brothers, Seaborn Travis and Amos Travis, executors of this my last will and testament," &c.

In February, 1854, Amos Travis, the executor, filed his petition in said probate court, alleging that said Mildred, one of the children named in the will, had intermarried with one William Morrison, and was therefore entitled under the will to her share in the said estate, and that it was not necessary to sell any of the negroes for the payment of debts; and praying the appointment of commissioners to make a division of the slaves under the will. The commissioners were appointed, and made their report to the ensuing March term of said court, allotting one half of the slaves to the said Mildred; and their report was confirmed by the court.

The transcript filed in this court being defective, there was an agreement of record, that it should be so amended as to show the following additional facts: "That the will of said testator was made a part of the application for the order of distribution; that the application stated, and it was proved to the court, that said Mildred was a child of the testator by a former marriage, and was married before arriving at the age of twenty-one years; that Fanny is a child of the testator by the wife named in the will, is under age, and has never been married; that Fanny and Mildred are the only legatees named in the will who are living; that the testator's wife named in the will died without marrying again, and before the marriage of Mildred, and before either of the children

arrived at the age of twenty-one years; that the child, with which the testator's wife was pregnant, was born, but died before arriving at the age of twenty-one years, without ever having married, and before the marriage of Mildred; that both the wife and child died, after the death of the testator, in 1843; that Amos Travis, as guardian of said Fanny, excepted to the writ to the commissioners, to their report, by which one-half of the slaves were given to said Morrison and wife, and to the decree made in the case."

The decree of division is now assigned as error.

J. R. METCALFE, for the appellant, contended that the bequests were vested legacies, and cited the following cases: McLemore v. McLemore, 8 Ala. 690; McLeod v. McDonnel, 6 ib. 236; Savage v. Benham, 17 ib. 127; Guyther v. Taylor, 3 Ired. Eq. 323; Shattuck v. Stedman, 2 Pick. 468; 4 Kent's Com. 202, 206; Roper on Legacies, vol. 1, p. 377; Goodtitle v. Whitby, 1 Burr. 228; Mansfield v. Dugard, 1 Eq. Ab. 195; Edwards v. Hammond, 3 Lev. 132; Hunt v. Moore, 14 East, 601; Hughes v. Hughes, 12 B. Monroe, 119; Wade v. Grimes, 7 How. Miss. 425; Scott v. James, 3 ib. 307; Taylor v. Taylor, 4 Hen. & M. 411; Roberts v. Baskins, 4 Dana, 573; Arnold v. Arnold, 11 B. Monroe, 89; Reed v. Buckley, 5 Watts & Serg. 517; 9 Vesey, 225; Furness v. Fox, 1 Cushing's R. 134.

TURNER REAVIS, contra, cited the following authorities: Anderson v. Felton, 1 Iredell's Eq. 55; Seabrook v. Seabrook, 1 McMullen's Eq. 201; Seibert's Appeal, 13 Penn. State R. 501; Chevaux v. Aislabie, 13 Sim. 71; Butcher v. Leach, 5 Beav. 392; Farmer v. Francis, 2 Sim. & Stu. 505; Hanson v. Graham, 3 Vesey, 363; Taylor v. Bacon, 8 Sim. 100; Bentinck v. Portland, 4 L. J. Ch. 13; 2 Chitty's Equity Digest, 1125, §§ 7, 8, 10; ib. 1126, § 2; ib. 1127, § 2; ib. 1129, § 5.

WALKER, J.—The single question in this case is, whether the bequests to the testator's wife and children were vested or contingent interests.

The law inclines to regard legacies as vested, rather than contingent, because it is presumed that the testator had in view the interests of the legatee who is the object of his

bounty.—Shattuck v. Stedman, 2 Pick. 468; Savage v. Benham, 17 Ala. 127; Farley v. Gilmer, 12 *ib.* 143. This rule of construction was invoked by the counsel for the appellant. It was also insisted, on the same side, that a devise of land to several, to be divided at a particular time, is regarded by the law as a vested estate; and that, although the rule may be different as to legacies, that mode of construction peculiar to devises must be adopted, where real and personal estate are bequeathed together, and are clearly designed by the testator to go together.

Conceding to the appellant the benefit of those rules, we are nevertheless of the opinion, that the legacies created by the will in this case must be regarded as contingent. The law does not favor the vesting of legacies, contrary to the testator's intention, as inferred from an examination of the entire will. The great object of the court, in reference to this, as well as other questions involving the construction of wills, is to ascertain the testator's real intention. This rule, which inclines to regard legacies as vested, can have no application, where, upon a view of the entire will, the testator's intention to create contingent legacies is clear. It is where the intention is obscure and doubtful, that the rule applies; and the adoption of the rule has its origin in the idea that the court will better conform to the testator's intention by regarding the legacies in the light most favorable to the objects of his bounty.

We do not regard the other rule of construction invoked for appellant, as applicable to this case. The legacies in the clause of the will under consideration are not bequests *in presenti*, to be divided at a future time. The entire will, taken together, and the words of the particular clause, indicate an intention on the part of the testator that the time appointed for the division should be of the substance of the gift, and that the legacies should not vest until some one of the contingencies set forth in the will should occur.

The testator leaves a widow and two infant daughters. To provide equally for each one of these three persons, and for a posthumous child, the birth of which is anticipated in the will, was the intention of the clause in controversy. The maintenance of the family, and the education of the children, are

provided for, until the contingency should occur upon which the division was to be made. Up to the time of division, a perfect equality of participation in the enjoymant of the property is secured to each one. The marriage of any one of the legatees, or the attainment of majority by any one of the children, was the contingency upon which the division was to be made. Until the occurrence of the contingency upon which the division was to be made, neither one of the legatees could have lawful descendants not provided for in the will; because, upon the marriage of either one of them, the executor is directed to give each one a child's part. Therefore, it could not result from regarding the legacies as contingent, that the children of any one of the legatees would be deprived of participation in the testator's estate. In this respect, this case differs from McLemore v. McLemore, 8 Ala., McLeod v. McDonnel, 6 Ala., and Savage v. Benham, 17 Ala., in which legacies were held to be vested.

The contingencies in this will are carefully so arranged, that no injustice could result, either to the legatees or their descendants, by a postponement of the legacies until some one of those contingencies should occur. The testator proceeded, in the construction of his will, upon the supposition, that the widow should live with his children upon his plantation, receive from it a maintenance, and preserve the family relation, until she should find new interests and other engagements in a second marriage. Neither the widow nor the children would need the legacy until it would vest. The intention was, so to prescribe future contingencies, upon which the property was to be divided and the legacies to vest, as to secure perfect equality among the objects of the testator's bounty, upon the occurrence of any of them, and yet to impose no hardships upon any person connected with him.

" *In the event of* " the marriage of any of the legatees, or the attainment of majority by any of the infants, it is made the *executor's* duty to divide the property equally, and assign and *give* to each one a a *child's part*, " which" the testator adds, "I give to them and their heirs forever." Again, in a clause, the professed object of which is explanation, it is directed that, in the event of the marriage of the wife, or of the marriage or

attainment of majority of any of the children, the "property shall be *then equally* divided among them, *giving* each one, as before stated, a *child's part of the same.*" There are here no words of gift *at the present time* to the legatees. The plain meaning is, that the legatees are to take upon the contingency. The words, "which I give to them and their heirs forever," must be construed in reference to the rest of the will, and must be understood to impart nothing more than an expression of the testator's wish that the legatees should take the shares assigned them respectively after the division. Such a construction harmonizes the entire sentence, and makes the words "which I give" consist with the direction that the executor shall "give and assign." There is no gift, except as connected with the contingency upon which the division is made.

It is permissible, in construing the will, to look at the condition of the testator's family.—McLeod v. McDonnel, 6 Ala. Looking at that, it is perceived, and must have been foreseen by the testator, that upon the death of the wife, from whom the child of the former marriage could not inherit, or upon the death of one of the children of the last marriage, who would inherit from each other to the exclusion of the half-blood, the executor could not give and assign to each one a child's part, if the legacies were vested. If the legacies be deemed contingent, there is no obstacle in the way of an equal division upon any of the contingencies.

The testator gives in the same will, by plain and unambiguous language, a vested legacy to the child of his first marriage. It is thus shown that he knew how to create a vested legacy; and it would be fair to infer, that, if it had been his imtention to make the other legacies vested interests, he would have employed language equally clear and intelligible. Anderson v. Felton, 1 Iredell's Eq. 59.

Our conclusion is, that the legacies, to be given and assigned by the executor in the event of the marriage or attainment of majority of any of the legatees, are contingent; and that those of the legatees who were alive at the time when some one of them married or arrived at majority, take in equal parts the entire bequest mentioned in the clauses under consideration. We attain this conclusion not merely by refer-

ence to any particular words contained in the will, but upon a view of the entire instrument. We do not think any of the previous decisions of this court are in conflict with this decision.

The authorities pertaining to the questions decided in this opinion, will be found collected on the briefs of counsel.

The judgment of the court below is affirmed, at the cost of the appellant.