MARR, ex'x, vs. m'cullough, adm'r.

1. Where a legacy is given generally, without appointing the time for its payment, it vests immediately upon the testator's death, though it be not demandable until the expiration of the period defined by law, after the grant of letters testamentary, and if the legatee die before he is allowed to adopt coercive measures with a view to its recovery, his personal representative will be entitled to the legacy.

2. Legacies payable after the death of the testator, are either vested or contingent, and where the testator annexes *time* to the *payment only*, the legacy will be vested, but if to the *gift* itself, it will be contingent.

3. Where it appears from the construction of the *whole will*, that the testator intended the legacy should not vest until the time prescribed for the payment, and when the event upon which payment is directed is uncertain,—there, the legacy will not be vested upon the maxim, *dies incertus in testamento conditionem facit*.

4. Where a legacy is contingent, no interest will pass to the executors or administrators of the legatee, if he die before the period arrive for the legacy to vest.

5. It has been often held, that the gift of a personal legacy, to be paid upon a future uncertain event, with the direction to pay to the legatee the entire interest accruing in the mean time, sufficiently indicates that it was not the testator's intention to make the legacy conditional.

6. Yet it has been said, that a legacy payable at a future time, will not vest where less than the whole amount of interest is ordered to be paid annually, or where it is to be paid out of another fund, or where the legacy is given out of real estate.

7. But if from a view of the whole will, it appear, that the tes-

tator intended to make the interest a subject of bequest until a future period, and the principal was then for the first time to be taken out from the residuum of the estate, and paid to the legatee, the legacy does not vest,—the gift of the interest and principal is separate and distinct, and the time of the payment of the principal is of the essence of the gift.

8. *Secus*, where no intention can be gathered from the will, to countervail the legal inference that the gift of the interest vests the principal.

9. Where the *corpus* of a legacy was given to the executors as *trustees*, with a postponement of the payment to an indefinite period, depending upon an exercise of their discretion, with the direction that the interest should be paid in the meantime, the legacy, upon the authority of precedent, as well as upon principle, vested in the legatee, immediately on the death of the testator.

10. And an administrator does not occupy a more favorable position in regard to the payment of a legacy, thus bequeathed, than his intestate (the legatee) did, and cannot therefore be allowed to urge an objection to the payment to the intestate while living, which would not have been available, if made by the intestate himself.

11. So, where a legatee in his life time, had received the full amount of such a legacy, the discretion of the executor exercised in the payment, cannot be impeached by the personal representative of the legatee.

Error to the Circuit Court of Tuscaloosa county exercising Chancery jurisdiction.

Bill to charge an executor for a legacy alleged to have been improvidently paid.

On the first day of March, eighteen hundred and thirty-four, James McCullough, of the county aforesaid, administrator, *de bonis non*, of the estate of Benjamin Franklin Spencer, deceased, who died intestate, in

said county, on the first day of February, eighteen hundred and thirty, came, and filed his bill against Nancy G. Marr, executrix of the last will and testament of William M. Marr, deceased, which bill stated : That, on the seventh day of September, eighteen hundred and twenty-six, John Spencer, senior, of the said county of Tuscaloosa, made his last and will and testament, in writing, and which was duly signed and published by him, and attested in such manner as by law required for bequeathing real and personal estate, and appointed William M. Marr, Edward B. Elliott, and Thompson Windham, executors of his said last will and testament: That the testator, on the first day of October, in the year last aforesaid, died, possessed of a very large real and personal estate, and the will was duly proved in the Orphans' court of said county, and the executors aforesaid took upon themselves the execution: That Windham subsequently resigned his trust as executor, when the whole duties of the execution of the will, devolved on said Marr and said Elliot: That the ninth item of the will bequeathed to the testator's son, Benjamin Franklin Spencer, (intestate of the complainant,) one thousand dollars, to remain in the hands of the executors as trustees, for his benefit, the interest of the same to be paid yearly to him by the executors, but the executors were charged never to pay to the said son, any part of the thousand dollars, until they should be thoroughly satisfied that he would prudently manage the same, &c.: That by the twelfth item of said last will and testament, after directing that all his just debts, and the expenses of settling his estate, be first paid,—the said testator willed as follows: The balance of his estate not specially bequeathed, it was his will should be sold by the executors, upon a credit of twelve months, taking bond with sufficient security, reserving an acre of land, including the grave yard on the plantation on which the testator lived, and the moneys arising from the sale of all

the personal and real estate not bequeathed, should be applied to the payment of the monied legacies; and after satisfying the same, one hundred dollars was appropriated to enclose the grave yard; the remaining part of the estate, after paying debts and expenses, and the special bequests designated, were to be divided as follows, to wit: 1. Henry W. Spencer and Sarah Jane Spencer, children of John Spencer, were to have one eighth, to be kept and loaned out upon interest, until either of them might marry, or arrive at full age, then the said eighth part to be equally divided between them. After several other bequests of the residuary part of the estate, the said will proceeded, as follows, to wit: "likewise to the said executors, in trust for Benjamin Franklin Spencer, one eighth, to be managed as the bequest heretofore made for his benefit."

The bill then charged, that the legacy of one thousand dollars, by the said last will and testament given to complainant's intestate, and the said one eighth part of the residuum of the estate of the testator, so as aforesaid given to the executors, in trust for the benefit of complainant's intestate, were so given by reason of the prodigal and intemperate habits of said legatee, to prevent any imprudent waste of the legacies, and that the yearly interest arising from them might afford to the legatee a comfortable and suitable maintenance, until he should reform and refrain from his prodigal and intemperate habits.

The bill further stated, that the executors, Marr and Elliot, continued to perform the duties and trust in them reposed by the will, until the fourteenth day of January, eighteen hundred and thirty-one, when a final settlement of the estate of the said testator was made, in the Orphans' court of the county of Tuscaloosa, on which settlement a decree was made and signed by the judge of said court, by virtue of which decree, said Marr, executor as aforesaid, became and

was bound to pay to said intestate of the complainant, the sum of twelve hundred and eighty-seven dollars and twenty-five cents, according to the terms and conditions of the will, being a part of the legacies bequeathed to the said intestate.

After the making of the said final settlement and decree as aforesaid, said Marr died, leaving a very large estate, both real and personal, and the said sum of twelve hundred and eighty-seven dollars and twenty-five cents, in said decree mentioned, remained in his hands at the time of his death. Before the death of said Marr, he made and published his last will and testament, by which his wife, Nancy G. Marr, the defendant, was appointed his sole executrix. After the death of Marr, the defendant caused his last will and testament to be proved according to law, in the Orphans' court of said county, and took upon herself the burthen of the execution of said will, and so the complainant said, the said Nancy G. Marr, the defendant, the executrix as aforesaid, became chargeable with the payment of that portion and amount of the legacies bequeathed to complainant's intestate, by the will of his said father, the said John Spencer, senior, deceased, mentioned and specified in said decree, and by the said decree directed to be paid to the said intestate, according to the terms and conditions of the said last will and testament of said John Spencer, senior, deceased, in the same manner as the said William M. Marr was, during his life time, and still would be, were he now living.

After the death of the said William M. Marr, and after his will had been proved as aforesaid, to wit, on the first day of February, eighteen hundred and thirty-two, the said Benjamin Franklin Spencer died, in the county of Tuscaloosa, aforesaid, intestate, leaving several brothers and sisters, his heirs at law, without having in any wise reformed his prodigal and intemperate habits, so as to have entitled himself, at any

time, to the payment of the legacies so as aforesaid bequeathed to him by his father's will, or to have authorized and justified the said executors in the payment of the same, or any part thereof, save only the legal interest annually accruing on the same, to which he was entitled yearly for his support. After the death of Benjamin Franklin Spencer, to wit, on the fourth day of February, eighteen hundred and thirty-three, (none of the kindred of said Benjamin Franklin Spencer, or any of his creditors entitled to the administration of his estate, having applied for administration thereof,) administration of all and singular, the goods and chattels, rights and credits, which were of the said Benjamin Franklin Spencer, deceased, at the time of his death, was committed to William Y. Glover, then and still sheriff of said county of Tuscaloosa, according to the statute in such case made and provided.

Afterward, to wit, on the twentieth day of February, in the year eighteen hundred and thirty-four, complainant, in right of his wife, Rebecca Jane, daughter of John Spencer, senior, deceased, and sister of the said Benjamin F. Spencer, deceased, entitled to a distributive share of the estate of the said Benjamin Franklin Spencer, obtained a revocation of the letters of administration, granted to the sheriff as aforesaid, and obtained a grant of the same from the County court, as administrator *de bonis non*, and qualified according to law, and the said sum of twelve hundred and eighty-seven dollars and twenty-five cents, being a portion and part of the legacies bequeathed, as aforesaid, to complainant's intestate, and by the decree of the Orphans' court, ordered and directed to be paid by the said William M. Marr, as executor as aforesaid, being a part of the estate of the intestate, at the time of granting of the letters of administration, as aforesaid, to complainant, remained unadministered by the said William Y. Glover, as sheriff and administrator, as

aforesaid ; the whole, or any part thereof, having at no time been paid to, or received by him.

The bill further stated, that by reason of the premises, complainant became entitled to demand and receive, from said Nancy G. Marr, executrix, as aforesaid, and she, said executrix, was bound to pay to complainant, as administrator, the said sum of twelve hundred and eighty-seven dollars and twenty-five cents, decreed to be paid by said Marr, according to the terms, legal effect, and conditions of the decree, and of the last will and testament of said John Spencer, senior, deceased, and to that end, complainant had requested defendant to pay the same, which she had refused to do, pretending that she was not bound to pay the same, and that said sum of money had been paid to complainant's intestate, &c.

All of which was contrary to equity, &c.

The bill prayed for a full, true, and explicit answer to the matters charged and stated,—for the writ of subpœna, and that defendant, as the executrix of William M. Marr, deceased, might be decreed to pay him, complainant, administrator as aforesaid, the said sum of twelve hundred and eighty-seven dollars and twenty-five cents, &c.

The bill was accompanied with a copy of the will, and of the order of the Orphans' court of Tuscaloosa, decreeing the payment of the sum of money mentioned in the bill.

In answer of Nancy G. Marr, administratrix of William M. Marr, deceased, defendant to the bill of complaint of James McCullough, as administrator *de bonis non* of Benjamin F. Spencer, deceased—stated :

That respondent was informed and believed, that the testator, Spencer, did make his last will and testament of the date and purport as in the bill alleged, and afterwards departed this life ; and that by the said will, William M. Marr, Edward B. Elliot, and Thompson Windham were appointed executors: That testator

2м

left a large real and personal estate; that the will was proved, as stated in the bill, and the executors undertook the administration thereof; after which, said Windham resigned as executor, as stated in the bill, and the execution of the will devolved on the said Marr and said Elliot.

The answer admitted the copy of the will attached to complainant's bill to be a true copy, but denied that any thing contained in the will, authorized the inference drawn therefrom, *that the legacies given to said Benjamin F. Spencer for his use, were so given by reason of the prodigal and intemperate habits of said Benjamin.* Respondent was advised, that in ordinary cases, clear of ambiguity, no other mode of ascertaining the testator's intention could be legally resorted to, but a fair, reasonable, and common sense interpretation of the words used in the will, and by this test it appeared that, for some reasons, the testator chose to leave the legacies intended for the said Benjamin F. payable whenever his executors should believe the legatee *would prudently manage the same.* Nothing was said in the will of said legatee's being prodigal, or intemperate, but it was virtually said that he was deficient in prudence enough to manage the legacies left him; when he obtained that prudence, in the opinion of the executors, or such of them as administered the will, they were authorized to pay him the legacies.

The answer admits that Marr and Elliot, after the resignation of Windham, continued to discharge the duties of executors, until the fourteenth day of January, eighteen hundred and thirty-one, when a final settlement of the estate was made, and a decree rendered, as set forth in the bill of complaint and appended to the same, by which the testator of respondent was ordered to pay to said Benjamin F. Spencer, the sum of twelve hundred and eighty-seven dollars and twenty-five cents, and that he was bound to pay the same, subject to a deduction of any amounts he had

previously paid, on account of the legacies, to said Benjamin F. according to the terms and conditions of said last will and testament of said John Spencer, senior, deceased.

Respondent admitted that, after the making of said final settlement and decree, as aforesaid, to wit, on the first day of September, eighteen hundred and thirty-one, the said William M. Marr departed this life, leaving a considerable estate, both real and personal, but denied that the sum decreed, as aforesaid, to be paid to said Benjamin F., or any part thereof, was remaining in the hands of said Marr, but averred that on the eleventh day of February, eighteen hundred and thirty-one, he paid and wholly satisfied the full amount he was bound to pay said Benjamin F., who executed to said William M. Marr, a receipt and release for one thousand four hundred and twenty-three dollars, in full of the principal and interest due him, said Benjamin F. as one of the legatees of said John Spencer, senior, deceased, a copy of which was appended to the answer. The payment was made pursuant to the injunctions of the will, as said Marr was legally advised, and in a conscientious discharge of the duty and trust reposed in him by the will. William M. Marr made and published his will, as alleged in the bill, and appointed respondent executrix of the same, and afterwards departed this life, and respondent took upon herself the execution of the same, as alleged in the bill; but respondent denied that she thereby became chargeable as executrix with the payment of any portion of the legacies bequeathed to complainant's intestate—the same having been fully paid off and satisfied, as aforesaid.

Respondent was unable to state what the habits of said Benjamin F. were previously to his death, but denied that he had not so conducted himself, at some period between the decase of his father and his own death, as to entitle himself to a payment, under the

will, of the legacies bequeathed him, by inducing a satisfactory conviction that he would prudently manage the same. Respondent relied, also, upon the statute of non-claim—the period of eighteen months having elapsed after the issuance to her of letters testamentary, under the will of her husband, and before application of any sort, from any quarter, was made to her in relation to the legacies aforesaid. Defendant also demurred to the bill—because,

1. It was not alleged that payment of said legacies had not been made to said Benjamin F. in his life time.

2. Because it appeared by the bill that no demand of payment, or presentation of a claim of said legacies, was made to said defendant, as executrix as aforesaid, within eighteen months after letters testamentary were granted to her, as aforesaid, &c.

The receipt appended to the answer was dated on the eleventh day of February, eighteen hundred and thirty-one, and signed and sealed by B. F. Spencer, and stated, that he had, on that day, received of William M. Marr, one of the executors of the last will and testament of his father, John Spencer, senior, deceased, one thousand four hundred and twenty-three dollars, the same being the full amount due him from said Marr, on account of the moneys received by said Marr, as executor as aforesaid, and according to a final settlement made by the Court, on the eighteenth day of January previous ; and he released said Marr from all further claim, or claims, on account of his portion of his father's estate, &c.

The evidence submitted, showed that the legatee, the intestate of the complainant, had lived a very dissolute and intemperate life, from the time of the death of his father until his own decease, though there were occasional indications of reform, and periods of abstinence.

It appeared to the chancellor that, by the bill, and

the exhibits accompanying it, John Spencer, senior, deceased, in the year eighteen hundred and twenty-six, made his last will and testament, in which was a bequest to his son, B. F. Spencer, of one thousand dollars, and also, one eighth part of the residue of testator's estate, after the payment of his debts, and certain specific legacies, which the testator directed to remain in the hands of his executors, as trustees, for the benefit of his said son, the interest to be paid yearly for his support. The will charged the executors, never to pay the son, said B. F. Spencer, any part of the thousand dollars, until they should be thoroughly satisfied that he would prudently manage the same. The same injunction was imposed as to his residuary share. At a final settlement before the judge of the Orphan's court, respondent's testator was decreed to pay to said B. F. Spencer the sum of twelve hundred and eighty-seven dollars and twenty-five cents, to be paid according to the terms of the will.

It appeared further to the chancellor, that the answer of respondent admitted all the material allegations in the bill, but insisted that B. F. Spencer reformed, and that the testator of respondent paid him the sum decreed to be paid. But upon examining the testimony with great care, the chancellor was of opinion, that the evidence did not show that B. F. Spencer did, at any time, reform his habits so as to authorize the payment of the legacies bequeathed to him by his father's will. Admitting, therefore, that the money was paid, as insisted by the respondent, it was paid in violation of the trust reposed in the executors by the testator, and afforded no defence to a recovery.

It was therefore ordered, adjudged and decreed, that the respondent pay to the complainant as administrator, the sum of twelve hundred and eighty-seven dollars, and twenty-five cents, and interest on the same, from the date of the decree of the Orphan's court, and also the costs of the suit, both to be levied of the effects of the respondent's testator.

From this decree defendant prosecuted her writ of error—and at the present term of the Supreme court, the plaintiff in error assigned, that in the decree aforesaid, the court below erred —

1. Because the chancellor did not sustain the respondent's demurrer to complainant's bill;

2. Because the court below decreed in favor of the complainant, and

3. Because costs were decreed against the respondent.

*Crabb*, for plaintiff in error.

*Ellis & Peck*, contra.

COLLIER, C. J.—The questions arising in this case are—

First. Does the bequest of one thousand dollars by the will of John Spencer, senior, to his executors *in trust*, to be paid to the intestate of the defendant in error, when the executors "shall be thoroughly satisfied that he will prudently manage the same," with the *direction of the payment annually of interest thereon, in the meantime,* pass a vested legacy?

Second. Does the proof in the cause establish a payment by the plaintiff's testator to the defendant's intestate in his lifetime. If it does, can the defendant coerce a second payment, though the legacy had vested in his intestate?

1. If a legacy be given generally, without appointing the time for its payment, it vests immediately upon the testator's death, though it be not demandable until the expiration of the period defined by law, after the grant of letters testamentary. It is an interest *in præsenti solvendum in futuro*, and if the legatee die before he is allowed to adopt coercive measures with a view to its recovery, yet his personal representative will be entitled to the legacy. But when a period beyond the testator's death, is prescribed by the will for the payment of the legacy, it often becomes a perplexing question whether

it is vested or contingent. In the solution of this question, as in all others, arising upon the construction of wills, the intention of the testator exerts a controlling influence, when it is possible to be known by the aid of those rules which are established by law for its ascertainment. The construction of a will being settled, it may be laid down that the legacy will be vested, if the testator annexed *time* to the *payment only;* but if to the *gift*, then it will be contingent. And where contingent, no interest will pass to the executors or administrators of the legatee, if he dies before the period arrives for the legacy to vest.

It may be remarked, that the rule which considers a legacy as vested, where given in terms immediate, and the payment alone postponed, is itself subject to exceptions. Among these, may be enumerated the cases where it appears from a construction of the *whole will*, that the testator intended that the legacy should not vest until the time when it was to be paid, and where the event, upon which its payment is directed, is uncertain as to its taking place—upon the maxim, *dies incertus in testamento conditionem facit.* But this latter exception, will not apply in all cases where the event upon which the payment of a legacy is directed, is uncertain, and always gives place to the meaning of the testator, where it appears from a view of the entire will, that he did not intend to make the legacy conditional.

And it has been often held, that the gift of a legacy, to be paid upon a future uncertain event, with the direction to pay to the legatee, the interest accruing in the meantime, sufficiently indicates that it was not the testator's intention to make the legacy conditional.

In *Fonereau* vs. *Fonereau*,* there appeared to have been a devise of one thousand pounds to an infant, which the testator authorised his executors to lay out on such securities as they should see fit, and the interests or in-

---

* 3 Atk. 645.

come thereof, to be applied towards the education of the legatee as they should think proper, and also to apply a part of the principal to put him apprentice, and the remainder to be paid him when he shall have attained his age of twenty-five, and not before.    The Lord Chancellor, among other things, said: "It is true, there is a distinction, where a legacy is given to one *at* his age of twenty-one—there it is not vested: this distinction now is absolutely settled.    But there are cases, where, when a testator gives *interest* in the meantime, he gives a *property in the principal,* unless something arises on the face of the will, to take off the force of it.".   And it was holden that the legacy vested, and the securities were directed to be transferred to the representatives of the legatee—he having died before he "attained his age of twenty-five."

In *Booth* vs. *Booth,*[*] the testator having devised and bequeathed the larger portion of his real estate, "gave all the residue of his estate and effects, which should remain after paying his debts, &c." to certain trustees, "then executors, &c. upon trust, as soon after his decease as conveniently might be, to collect and get in the same, and invest the same from time to time in some of the public funds, &c., and upon trust, pay the dividends and produce thereof, as the same should from time to time become due, equally to his grand nieces, &c. until their respective marriages, and from and immediately after their respective marriages, to assign and transfer their respective moieties or shares thereof, unto them respectively."    One of the legatees being dead without ever having been married, it became material to ascertain whether the legacies vested.    *The Master of the Rolls*, decided that the legacies to the grand-nieces vested, upon the grounds that the dividends and produce were required to be paid, previous to the marriages of either, and for the additional reason, that they were the

---

[*] 4 Ves. R. 400.

bequest of a residue; and thereupon directed the moiety of the deceased legatee to be paid to her executor. So in *Monkhouse* vs. *Holmes*,* one of the principal questions discussed was, whether a bequest to trustees of eight hundred pounds, to pay the interest to the testator's wife for life, and then in parts and shares to legatees designated by the will, gave a vested interest to the several legatees. Lord Loughborough considered that the form of the bequest clearly indicated the intention of the testator not to annex time to the substance of the gift, but only to its payment. It may be remarked generally, that if the day is certain when a legacy is to be paid, the legacy is vested, "but where uncertain, the true question will be, whether it is in the nature of a condition." If it be a condition, time is annexed to the substance of the gift, and the legacy does not vest, until the arrival of the appointed period, or the happening of the event. In the case last noticed, *Cloberry's* case† is cited, in which Lord Nottingham said, "the giving interest shews no contingent legacy was intended."

This doctrine was elaborately considered in *Paterson* vs. *Ellis' ex'rs*,‡ by the Court of errors of New York; and it was there determined, that where the gift of a legacy is absolute, and the time of payment only postponed, as where a sum of money is given to be paid to the legatee when he shall attain a certain age, time not being of the substance of the gift, postpones the payment, but not the vesting of the legacy; and if the legatee die before the period appointed, his representatives are entitled to the money. But where the legacy is given *when* the legatee shall attain, or *provided* he does attain the age prescribed, *time* is of the substance of the gift, and the legacy does not vest until the contingency happens. And even where the legacy is given *when* the legatee attains a certain age, if the testator directs the *interest* of the legacy to be applied in the meantime for

---

*1 Bro. Ch. R. 298.    †2 Vent. 342.    ‡11 Wend. R. 259.

the benefit of the legatee, there being an absolute gift of the *interest*, the principal will be deemed to have vested. So the legacy will be deemed to have vested, if the trustee be invested with a discretion to pay it before the time specified in the will. Without noticing more particularly the great number of authorities, upon the application of this exception to the maxim of *dies incertus in testamento conditionem facit*, we shall content ourselves merely with a reference to some of them. *Collins* vs. *Metcalfe*[*]—*Stapleton* vs. *Cheele*[†]—*Hoath* vs. *Hoath*[‡] — *Walcott* vs. *Hall*[§]—*Dodson* vs. *Hay*[‖]—*Hanson* vs. *Graham*[¶]—*Lane* vs. *Goudge*[**]—*Leake* vs. *Robinson*[††]—*Jones* vs. *Mackelvain*[‡‡]—*Livesey* vs. *Livesey*[§§]—*Pulsford* vs. *Hunter*[‖‖] — *Vawdly* vs. *Geddes*[¶¶] — *Butler's note to Fearne Cont. Rem.* 553—*Green* vs. *Pigot*[***]—*May* vs. *Wood*[†††]— *Cave* vs. *Cave*[‡‡‡]—*Van* vs. *Clark*[§§§]—*Piercy* vs. *Roberts*[‖‖‖]. But it has been said the gift of the accruing interest, or a direction to apply it for the benefit of the legatee, will not vest the legacy, if the amount given for maintenance be not co-extensive with the whole amount of the interest, or if it be, to be paid out of another fund.[¶¶¶] It has been also said that where legacies are given out of real estate, the gift of interest immediately will not have the effect to vest the legacy.—*Prouse* vs. *Abingdon*[****]— *Smith* vs. *Smith*[††††]—*Pearce* vs. *Lowman*[‡‡‡‡]— *Watkins* vs. *Cheek*[§§§§]—*Carter* vs. *Bletsoe*[‖‖‖‖]—*Hubert* vs. *Parsons*[¶¶¶¶] —*Paterson* vs. *Ellis' ex'rs.*[*****] And it has been determined that where a testator made a bequest of legacies to infants *when* they should attain the age of twenty-one years, and appointed a trustee during their minori-

---

[*] 1 Vern. 462. [†] 2 Vern. 673. [‡] 2 Bro. Ch. R. 4. [§] Ibid, 305. [‖] Ibid, 404. [¶] 6 Ves. 239. [**] 9 Ves. 229. [††] 2 Meriv. 386. [‡‡] 1 Russ. Ch. R. 220. [§§] 3 Cond. Ch. R. 399. [‖‖] 3 Bro. Ch. R. 416. [¶¶] 4 Cond. Ch. R. 389. [***] 1 Bro. Ch. R. 104-5. [†††] 3 Bro. Ch. R. 471. [‡‡‡] 2 Vern. 508. [§§§] 1 Atk. 510. [‖‖‖] 6 Cond. Ch. R. 469. [¶¶¶] Bro. Ch. R. 416; 6 Ves. 249; 2 Me. iv. 386-7; 4 Cond. Ch. R. 389; 1 Roper's Leg. 497. [****] 1 Atk. 482. [††††] 2 Vern. 92. [‡‡‡‡] 3 Ves. 135. [§§§§] 1 Cond. Ch. R. 416. [‖‖‖‖] 2 Vern. 617. [¶¶¶¶] 2 Ves. 262. [*****] 1 Wend. R. 272; see also 1 Atk. 512-556.

ty, the appointment of a trustee, indicated the testator's intention, that the legacy should vest, "as there could not be a trustee of nothing"—*Branstrom* vs. *Wilkinson*\* —*Paterson* vs. *Ellis.*† But we do not feel ourselves called on to consider these several questions here, as in the case before us, there is a direction to pay the *entire interest* of a *personal legacy*, which sufficiently manifests the testator's intention, that the legacy should vest.

In the construction of wills, we have already said that the testator's intention, where consistent with the law, must prevail.   Now as the *intention* is only *implied*, that a legacy shall vest, from the direction *to pay interest* until the principal is due,—if from a view of the whole will, it appears that the testator intended to make the interest a subject of the bequest, until some future period, and the principal is then for the first time to be taken out from the residue of his estate and paid to the legatee, it is clear that the legacy does not vest.   "Because the gift and the payment of it are one and the same, and it was the intention of the testator to make the gift of the interest and the capital separate and distinct, so as to constitute the time appointed for payment of the principal, the very essence of the gift of it."‡   But if no intention can be gathered from the will, to countervail the legal inference, that the gift of the interest vests the principal, the representatives of the legatee will always be entitled.   In the present case, the *corpus* of the legacy was given to the executors as *trustees*, with a postponement of the payment to an indefinite period, depending upon a careful and honest exercise of their discretion.   The legacy then, not only upon the authority of precedent, but upon principle also, vested in the defendant's intestate, immediately on the death of John Spencer, the testator.

2. It is sufficiently shown by the proof, that the testa-

---

\* 7 Ves. 422.   † 11 Wend. R. 274.   ‡ 1 Roper's Leg. 500; 3 Ves. 363; 12 Ves. 75; 3 Atk. 219; 2 Meriv. 363.

tor of the plaintiff in error, paid to the defendant's intestate the entire amount of his legacy, either in money or in something else esteemed by him as an equivalent, and obtained his receipt in full, after the rendition of the decree by the judge of the County court. And the only question remaining to be considered, is, whether such payment was a legal satisfaction of the legacy. The defendant in error cannot occupy a more favorable position than his intestate did while living, so as to enable him to urge an objection to the payment, which would not have been available, if made by the intestate himself. It might be granted, that the plaintiff's testator did not exercise his discretion with wisdom or even in good faith, in paying to the intestate his legacy, and yet the defendant is not entitled to recover, if there was a satisfaction in point of fact. The intestate could not have been heard to allege his incapacity to manage his own affairs with prudence, as a reason why his legacy was unsatisfied: to have entertained such an objection, would be to allow one to profit by his own wrong. The legacy then, having vested in the intestate of the defendant, it was competent for him either to have released it, or to have received it in possession—and it appearing from the proof, that it was fully paid to him, there was no interest left to be transmitted to his administrator, by the grant of administration: and as the death of the legatee could not revive the charge against the plaintiff, it follows, that the defendant has no cause of complaint against her.

The decree of the Circuit court is therefore reversed; and this court rendering such decree as should have been rendered by the Circuit court, doth order, &c. the bill to be dismissed, and the costs of this court and the court below, to be paid by the defendant in error.