GOODMAN, Ex'r., *vs.* BENHAM, Adm'r.

1. Where, in a bill filed against the administrator with the will annexed of an estate, the complainant asserts title to the undivided interest of one of several legatees, two of whom are dead, in the absence of an allegation that the deceased legatees were free from debt, he cannot proceed without amending his bill, so as to bring in their personal representatives.

2. The chancellor may *mere motu* notice a defect of parties to a bill at the hearing, and order it to stand over on leave to amend, or dismiss it without prejudice.

3. Where the chancellor proposes to the complainant in a bill, which is defective for want of the necessary parties, to amend it, and he refuses to do so, it is not error to dismiss it.

4. Where a testator directs his executors to keep together and manage the property until the death of his widow, to distribute the annual proceeds, after supplying her wants, among the legatees, and at her death to divide the property itself among them in such way, taking into the account the advances made by himself and those that may be made by the executors, as shall render the portion of each equal, a purchaser of the interest of one of the legatees acquires only the rights of such legatee upon the final settlement, and cannot claim any other or greater interest.

Error to the Chancery Court of Lauderdale. Before the Hon. David G. Ligon, Chancellor.

The bill in this case was filed by the plaintiff in error as executor of Henry Anderson, against the defendant in error as the administrator *cum testamento annexo* of Samuel Savage, and makes the following case: Samuel Savage died in 1837, leaving a will, a copy of which is made an exhibit to the bill, by which he directs that his property, both real and personal, be kept together and managed by his executors until the death of his wife, and that the annual proceeds, after supplying her wants, be divided among his children and grandchildren; that upon the death of his wife all his property then in the hands of his executors be equally divided among his children and grandchildren, viz: one seventh part to the children of his daughter Behethalana Dillahunty, one seventh to the children of his deceased daughter Francis J. Rucker, one seventh to Samuel Savage Dillahunty, one seventh to his son Wm. F. T.

Savage, one seventh to his son George M. Savage, one seventh to his son Samuel G. Savage, and one seventh to his son John Tacitus Savage; that on the final division the advances already made to any of them, and which will be found charged in a book kept by him, that he has sealed up and committed to the custody of his wife as the evidence of such advances, are to be deducted from the portion of the child or grandchild so advanced; that his executors keep an account, in the same manner that he has done, of the several advances made by them to the several legatees up to the time of the final division; and that the portion of each, upon such division, taking the advances made by himself in his life-time and by his executors into the account, be made equal. Geo. M. Savage and others are appointed executors of this will, which was admitted to probate in the same year it bears date. Wm. F. T. Savage died before the testator, Samuel G. in April 1840, and John T. in March 1841, without issue, and the widow died in September of the last named year. In 1840, the testator of the plaintiff in error and one Hanna recovered a judgment against George M. Savage, one of the legatees, and in 1845 caused an execution, issued on it, to be levied on the interest of the said George M. in the lands of his deceased father, and at the sale the plaintiff's testator became the purchaser. In 1847, the defendant in error filed a petition in the Orphans' Court for a sale of the lands of the testator, Samuel Savage, for the purpose of a more equal distribution among the legatees, to which the plaintiff in error withdrew all opposition, in consideration of a written agreement by the defendant that he would retain in his hands one fourth of the proceeds of sale subject to the decision of the Court of Chancery in the present suit, which is instituted to obtain a decree therefor. The answer admits all the material allegations of the bill, but insists that Geo. M. Savage, who qualified as executor under the will of his father, as such executor received large sums of money as assets of the estate, and had made no settlement; that he had received his share of the personalty, and that the estate is yet unsettled, &c.

The chancellor dismissed the bill for want of equity and a defect of parties, having first given the plaintiff an opportunity to obviate the latter objection by an amendment of the bill,

which he refused to embrace. The decree of the chancellor is now assigned as error.

L. P. WALKER, for plaintiff in error:

1. The judgment of complainant was obtained in October 1840, and operates a lien upon the real estate of the defendant from that time. 3 Ala. Rep. 560; 4 ib. 543.

2. Upon the death of the other legatees named in the bill, George M. Savage became invested with a title to one fourth part of the whole estate, real and personal. As to the real estate, he was with the other heirs a tenant in common, and the interest of each of them was subject to levy and sale. 3 Stew. & Port. 251; 2 U. S. Dig. 328, §§ 324, 321—329, § 341; 14 Mass. 20; 15 Mass. 439; 7 Ala. Rep. 115.

3. As a replication is on file, and the cause was not heard on bill and answer alone by consent, nothing that is stated in the answer by way of avoidance can be considered as true, unless proved. The answer denies none of the facts upon which the equity is based, but sets up new matter, none of which is proved, and that portion of it which is admitted by the agreement does not affect our rights: For in contemplation of law, the judgment, levy and sale are all one act; and it was not in the power of Geo. M. Savage alone, or of him with third persons, by any fraud, conveyance or other act, to defeat or impair the lien of the judgment upon his interest in the real estate of his father.

4. The date and language of the agreement between Benham and complainant's counsel show that it was made before the decree of the Orphans' Court, and that their objections were not overruled, but withdrawn. But even if this were so, it would not affect complainant, as it is clear that until the personal estate was exhausted, the title cast by law upon the heirs, as regards the real estate, was not divested. And as Anderson purchased G. M. Savage's interest, he occupies his place, in so far as his right to contest was concerned.

5. It was not necessary to make the other legatees parties, for the money in controversy is *assets* in the hands of the administrator, and where the proceeding is against *assets*, the administrator is the only necessary party.

6. The bill is based upon the agreement between Goodman

and Benham. It is a personal obligation on the part of Benham, and no other persons need have been made parties; and this was upon good consideration—he undertook to pay the money in his individual character.

7. This is the only court where Goodman could obtain redress.—1st. He could not sue for the land, because it had been sold by his assent, and the purchaser at such sale took a good title. 2d. He could not sue for the money on the agreement, because by it the remedy was to be in this court, and the rights of the parties were to be fixed in this court.

8. If the title acquired by the purchase at sheriff's sale is divested by the proceedings in the Orphans' Court, the purchaser is substituted to the claims of the devisee and legatee and is entitled to be reimbursed out of the personalty. Any other course would enable an administrator, by applying for sales of land instead of personalty, to defeat creditors and purchasers.

9. Personalty is first liable to pay debts; and if the land has been taken for this purpose, the owner of the land or party having a claim to the land is entitled to be paid out of the personalty.

10. If the testator and George Savage had been tenants in common of these lands, George Savage having the precise interest that he held under the will, and this had been purchased under judgment and execution, and an agreement had been made between the purchaser and the administrator, like the one made in this case, Benham would be the only proper party, and the facts of this case do not change the rule.

11. The insolvency of the sureties on the bond cannot change the rights of the parties. The other devisees may have been negligent, and thus have lost their equities, and this is not negatived by their answer, and they have their remedy over against the judge of the Orphans' Court for not having required additional security.

ORMOND, for defendant:

1. The will is the law of the case, and from that it is clearly obvious the testator intended his children should be equally interested,—see in particular the 3d and 5th clauses, requiring an account to be taken of advances, &c. Yet the bill is filed

upon the supposition that G. M. Savage has under the will an interest in the land, no matter what may be the state of the accounts, and claims in virtue of the sale one fourth part of the proceeds.

2. In this State, land does not descend to the heir at law or devisee unconditionally, but only *sub modo*. The administrator has the right to enter upon the land and rent it out, or to apply to the Orphans' Court for an order of sale to pay debts or make more equal distribution. It results necessarily that an unconditional legal title does not pass to the heir or devisee, and therefore cannot be sold under execution at law. I think it is a self-evident proposition that the sheriff cannot sell that which he cannot give possession of, or by his conveyance authorise the purchaser to recover at law. This precise point is decided in Rabb v. Aikin, 2 McCord's Ch. 118.

3. If it were conceded that by the purchase the execution creditor was substituted to the rights of the devisee under the will, he could only insist on standing in his shoes after a settlement of the estate.—Childress v. Childress, 3 Ala. 752; Duffee v. Buchanan, 8 ib. 27; Brown v. Lang, 14 ib. 721. But that is not the purpose or prayer of the bill, nor has it any allegation adapted to such relief. The whole gravamen of the bill is the supposed right acquired by the purchase to one fourth the proceeds of the sale of the land, without regard to the actual interest of the devisee under the will upon a settlement of the estate. (5 Port. 26, as to the relief in such a case.) See the admission of the complainant on page 21 of the record, that G. M. Savage has received his portion of the personalty, and has not accounted as executor.

4. The bill is fatally defective in not making the representatives of the three deceased brothers parties.

COLLIER, C. J.—The consent of the plaintiff and defendant, contained in their written agreement, that the rights of the plaintiff resulting from the purchase of his testator at the execution sale against George M. Savage might be settled in the Court of Chancery, cannot impart jurisdiction to that court if its jurisdiction be otherwise indefensible. But we will not stop to consider this question, as the case may be disposed of upon another ground, and the controversy most probably closed.

It will be observed upon a reference to the will of the defendant's testator, and it is also shown by the allegations of the bill, that the testator directed all his estate, real and personal, in the hands of his executors, upon the death of his wife to be equally divided between his "children." The allotments to the beneficiaries and the legatees are thus particularized, viz: one seventh part to the children of Behethalona Dillahunty (testator's daughter) or the survivor of them in equal proportions; one seventh part to the children of his deceased daughter Frances J. Rucker, or the survivor of them (upon certain conditions not material to be noticed); one seventh part to Samuel Savage Dillahunty (upon certain conditions not material to the present case); one seventh to his son Wm. F. T. Savage; one seventh to his son George M. Savage; one seventh to his son Samuel G. Savage; one seventh to his son John Tacitus Savage.

The bill alleges that Wm. F. T. Savage was dead at the time the will was made; that Samuel G. died in April 1840, and John T. in March 1841—neither of whom left any issue or made a will: thus leaving four only of the legatees between whom the estate was to be divided. It appears that the will was admitted to probate in 1837, and that the testator's widow died in September 1841, long previous to the purchase of the interest of Geo. M. Savage by the plaintiff's testator.

In respect to the legacy to Wm. F. T. S., looking to the will alone, it must be considered as having lapsed by his death previous to the will being executed, and consequently remained a part of the testator's estate, to be distributed and divided either according to the directions of his will or as in case of intestacy. As to this portion of the testator's estate, it may be considered as committed to the defendant to be disposed of according to law; and he is the only party necessary to defend a suit which may affect it.

The other two sons who have died since their father were entitled at the time of their respective deaths to the provisions made for them by the will, at least as to the personalty, although they could not have have been let into the enjoyment of their portions until the death of their mother—their legacies were thus far vested, though to be set apart to them *in futuro*. It does not appear that these legatees were not indebted at the

time of their death; and this intendment cannot be made in favor of the complainant, conceding that it would be sufficient to relieve him from the necessity of bringing their representatives before the court. Besides, it is not proper that the settlement of their estates should be made by administrators specially representing them; and can such a mode of adjustment be dispensed with, and their next of kin be let in to the enjoyment of their estates, although there were no debts to be paid or collected? However this question may be answered, we think that in the absence of an allegation that the deceased legatees were free from debt, the plaintiff cannot proceed upon the case he has stated, without amending his bill, so as to bring in their personal and perhaps real representatives. Such a modification of the bill is required by the familiar rule which declares all parties in interest to be made parties to a suit in equity. This rule, it is true, has its exceptions, but none which will justify the want of such essential parties, at least under the circumstances of this case. Marr v. McCullough, 6 Port. Rep. 507.

It is not in dispensable to the action of the court that the want of parties should be presented by a demurrer; it is allowable for the chancellor to notice it *mere motu*, even at the hearing, and order the bill to stand over on leave to amend or to dismiss it without prejudice.

In the present case the chancellor proposed to the complainant to amend his bill, and he refused to do so. It was then entirely competent to have dismissed it. The fact that the decree does not direct the dismissal to be without prejudice is wholly immaterial; for if the plaintiff can make out a case against other parties in connection with the defendant, it cannot be pleaded in bar of a new suit. If it could in any case, it will not avail here, for the decree places the dismissal upon the grounds of a want of equity and defect of parties.

We might here close this opinion, but as it may be more agreeable to the parties to look farther into the case, and state some principle which may determine the propriety of ulterior proceedings, we think it best to do so.

Without attempting to recapitulate the several provisions of the will upon the subject, it is enough to say in general terms, that it indicates throughout a disposition to dispense favors

with great equality—a desire by the testator to deal justly with his children, and the descendants of such of them as were dead. So particular had the testator been in making advancements to his children, that he estimated the value of what he had given each of them, and noted it in a book, which by his will he declares he had sealed up and delivered to his wife, with directions to preserve it. This book he affirms shall be evidence of what it contains, and shall be refered to in equalizing the portions of the legatees. The executors were to observe the same particularity, so that when the final division was made, the shares of the beneficiaries could be proportioned with exactness, taking into the account what had been advanced both by the testator and his executor.

George M. Savage (whose interest in the real estate of the defendant's testator the plaintiff claims under a purchase by his testator at an execution sale in 1845,) qualified as executor in December 1837, and continued such up to Nov. 1842, when his authority was revoked. It is alleged by the answer that he wasted the estate to a large amount.

Conceding that the legatees named in the will of the defendant's testator had such an interest in the lands devised as could be sold under an execution against them, and still it is clear that the purchaser would be substituted to the rights of the devisee and entitled to nothing more. He could not resist a sale under a decree of the Orphans' Court for a cause, which would not avail the devisee; nor could he claim any other or greater interest in the proceeds. In all respects his rights would seem to be identical.

If G. M. S. while executor received the share to which he was entitled under his father's will, he should receive nothing upon the final division; and if he received more than his due proportion of the personalty, his interest in the lands should be so applied, if necessary, as to reimburse the excess. This is necessary to subserve the intention of the testator, is demanded by the principles of natural justice, and is the dictate of an enlightened equity.—See Childress v. Childress, 3 Ala. Rep. 752; Duffee v. Buchanan, 8 ib. 27; Brown v. Lang, 14 ib. 721. The equity which would subject the executor's interest to the reimbursement of the waste or misapplication of the assets attached previous to the judgment and execution

under which the plaintiff deduces title.   We do not however intend to intimate that this is important, but only to show that in a moral point of view, the right of the other legatees is strengthened by the removal of the executor and the conversion of the assets by him, before his interest was purchased by the plaintiff's testator.

We might have rested our opinion exclusively upon the ground that G. M. S. was obliged to account to his co-legatees for the abuse of his trust, before he should be allowed to receive from his father's estate one-seventh of the entire amount of it.   But the answer which brings his malversation to our view is in avoidance of, and not responsive to the bill, and does not in express terms allege that the assets converted exceded in value one-fourth the interest in the lands of the testator.   No proof has been taken to sustain the answer, and the admission of the complainant that a part of it is true does not furnish evidence necessary to have enabled the court of chancery to render a definitive decree in favor of the complainant upon the defence set up.

If the facts supposed had been proved, the case stated in the bill would have been fully met, but in the condition of the record, we can only affirm the decree for the failure of the complainant to bring all the essential parties before the court.