# Nelson, Ex'r, v. Murfee.

*Action against Surety on Official Bond of Sheriff for Failure to Make Money under Execution.*

1. *Lands of decedent ; title in heirs subject to administration.*—Under our statutes, as at common law, the title to lands, on the death of the ancestor, descends immediately to the heir at law ; but unlike the rule of the common law, it does not vest in the heir absolutely, but the descent may be intercepted, and the possession claimed and held by the personal representative, for the purposes of administration.

2. *Same; power of personal representative to sell.*—Among the unquestionable powers conferred upon the personal representative, is the right to petition for, and obtain an order, to sell the lands of the decedent for the payment of debts ; and when this right is asserted, and the lands are sold and conveyed under the order thus obtained, the title to the land which had descended to the heir, is completely divested ; and notwithstanding the heir may have sold and conveyed lands, or they may have been sold and conveyed as his property, the title the personal representative conveys, is not in the least impaired.

3. *When heir a debtor to ancestor, whether administrator has a prior right to lands descended, quære.*—When the heir is indebted to the estate of the ancestor, and is insolvent, whether the administrator has any prior right to demand payment out of the lands descended, which remain unsold, or whether it becomes a mere race of diligence between him and other creditors of the heir, is a question not raised in this case ; and while the court " is not prepared to admit it becomes a mere race of diligence," the question is left open and undecided.

4. *Proceeds of sale of land for payment of debts in hands of personal representative ; its qualities.*—While money acquired by the personal representative from the sale of lands, for payment of debts, and remaining in his hands for distribution after paying the debts, will be treated as having the qualities of land for certain purposes of administration and

[Nelson, Ex'r, v. Murfee.]

succession, for all other purposes it is only money in the hands of the administrator; and any process or procedure to get it out of his hands, must necessarily be that which is adapted to the recovery of money as money.

5.	Same; personal representative has priority over heir's other creditors. When a surplus of money thus acquired remains in the hands of the personal representative for distribution, he is entitled to retain the share of an heir or distributee in such moneys in payment of a debt which the latter owes to the decedent's estate, as against, and in preference to the claim of a judgment creditor of such heir or distributee.

APPEAL from Hale Circuit Court.

Tried before Hon. GEO. H. CRAIG.

The facts are sufficiently stated in the opinion.

THOS. R. ROULHAC and J. J. GARRETT, for appellant.    (1).  It is settled that upon the death of a person seized of an heritable estate in lands, the title descends to, and vests in them. *Doe v. Hardy*, 52 Ala. 297; *McCully v. Chapman*, 58 Ala. 328; *Calhoun v. Fletcher*, 63 Ala. 580.    This title, so vested, may be alienated or devised by the heir, and the better opinion, therefore, seems to be, that where lands are made subject to execution, as is now universally the case, and there is no statutory prohibition of a levy upon, and sale of the interest of the heir in the lands of the estate, still unadministered, such interest, like other beneficial legal estates, is subject to execution.—Freeman on Ex. § 183; Rorer on Jud. Sales, §§ 631 and 646; Code of 1876, § 3209, Sub. 1; *Smith v. Hall*, 20 Ala. 784; *Graham v. Abercrombie*, 8 Ala. 552.    (2).  But the statutes of this State charge the whole property of a decedent, real and personal, with the payment of his debts.— Code of 1876, §§ 2429, 2252, 2261.    The interest of the heir in the real estate of his ancestor is, therefore, qualified.    His interest is *in* the estate, and *the estate* is superior to any interest therein.    The estate must answer first to any claims thereon before any interest therein can be recognized, or its benefits obtained; and the rights and powers conferred on the personal representative by the statute may either suspend or destroy the heir's right to the possession, his title, where the ancestor left debts.—*Calhoun v. Fletcher, supra* (3). Were John and Jabez C. Nelson, or their assignee, or purchaser at execution sale, here claiming either a legacy, or a distributive share of the personal assets of an estate, while retaining, by their indebtedness, a part of the assets of the estate in their own hands, there would scarcely arise a question at this day as to the right of the representative to withhold their legacy or share to the extent of their indebtedness.—Adams' Eq. m. p. 223; Toller on Ex. 338; Waterman on Set-off, § 190.    Real estate now being under our statute assets, the principle upholding this right of the representative, in case of a legacy or dis-

tributive share in personal assets, clearly authorizes the personal representative, in a case like the present, to retain in his hands the share of the heir in moneys in his hands for distribution, derived from the sale of lands, made for the payment of debts. Both real and personal property are assets, subject to the payment of debts, and the heir and distributee take either and both species of property by the same source of right, and in the same manner. See 1 Story's Eq. Jur. (12th Ed.) § 522 *a*. (4.) It is settled in this State that the representative of Gideon E. Nelson would, on her settlement, be chargeable with so much of the debt 'due her intestate's estate, as she had property or money of the debtor in her hands belonging to the estate. *Miller v. Irby's Adm'r*, 63 Ala. 486. It would have been a want of due diligence in not collecting debts due the estate, and therein a *devastavit*; and so having the money in hand with which to pay the debt, the law treats it as paid. If the representative had paid the debt with her own means, or had used means of her own to pay debts of the estate with, treating John and Jabez C. Nelson's debt as received by her, there can be no doubt she would, from the sale of the lands, be allowed to retain for her indemnity.—*Miller v. Irby's Adm'r, supra ; Livingston v. Newkirk*, 3 Johns. Ch. 312. (5). It can not be said that the facts of this case present a case of a race of diligence between the personal representative and a judgment creditor of the heir. A race implies a fair start, at least; and here there was no one to represent the deceased person, until the grant of letters testamentary or of administration; and such authority can not be obtained, under any circumstances, in less than fifteen days.—Code of 1876, § 2357. The case of *Mann v. Mann*, 12 Heisk. 245, is relied on to sustain this position; but we submit that the conclusion reached in that case can not be supported on principle or authority. (6). There is another view which greatly strengthens appellant's position. By section 2261 of the Code of 1876, an intestate's personal property, after payment of debts and charges, is to be distributed in the same manner as his real estate; and by section 2252 of same Code, his real estate, subject to the payment of his debts and charges, descends to his children or their descendants, or if none, to his brothers and sisters, or their descendants, etc.; and in both instances, in equal parts. These statutes secure uniformity of assets (1 Story's Eq. Jur. 12th Ed. § 552 *a*.), and also equality of descents and distribution. Now it is susceptible of mathematical demonstration, that if John and Jabez C. Nelson did not pay their debt to the estate, and it could not be retained out of their shares, as heirs, in Gideon's estate, by that fact alone the other heirs would be deprived of some portion of their inheritance, thereby destroying the equality of descent and distribution, a part

[Nelson, Ex'r, v. Murfee.]

of the inheritance. (7). A purchaser from the heir only takes his title and interest.—Freeman on Ex. § 183; Rorer on Jud. Sales, § 968; *Avent v. Read*, 2 Port. 480; *Lawson v. Orear*, 4 Ala. 156; *Cook v. Webb*, 18 Ala. 810; *Doe ex dem. Stevens v. King*, 21 Ala. 429; *Lang v. Waring*, 25 Ala. 625; *O'Neal v. Wilson*, 21 Ala. 288; *Childress v. Childress*, 3 Ala. 752; *Duffee v. Buchanan*, 8 Ala. 27; *Brown v. Lang*, 14 Ala. 721; *Lang v. Brown*, 21 Ala. 193; *Flynn v. Williams*, 1 Ir. Law, 509; *Rutherford v. Green*, 2 Ir. Eq. 122–8; *Procter v. Newhall*, 17 Mass. 91; *Goodman v. Benham*, 16 Ala. 625; Redf. on Wills, Part II, Chap. XIII, § 46, subd. 19, (3d Ed.) p. 388; *Willes v. Greenhill*, 29 Beav. 376; *Graham v. Abercrombie*, 8 Ala. 559; *Jeffs v. Woods*, 2 Pere Wms. 128. (8). As to the right of the personal representative to retain the shares of John and Jabez C. Nelson in this case, see also the following authorities: *Clapp v. Miserole*, 1 Abb. (N. Y.) 362; 1 Story's Eq. Jur. (12th Ed.) §§ 541, 579; *Skinner v. Sweet*, 3 Madd. 244; *Adair v. Shaw*, 1 Sch. & Lef. 262; *Plumer v. Marchant*, 3 Bur. 1380; Iredell on Executors, 529, § 4.

THOS. SEAY, *contra*.—(1). At common law a debt due the ancestor by the heir did not operate as a lien upon the real estate. The estate of the heir in the lands of the ancestor, *eo instanti*, upon the death of the ancestor, became as absolute as that of the ancestor himself.—4 Kent's Com. pp. 415–74; Wharton's Dig. p. 445, § 366; *McCoy v. Scott*, 2 R. 222, Lomax' Dig. pp. 744–5; *Procter v. Newhall*, 17 Mass. 81. And at common law the administrator was a stranger to the realty, having no power or control over it. If the personal estate was not sufficient for the payment of debts, the specialty creditors of the deceased had to proceed against the heir. The office of an administrator pertained only to the personalty. These are elementary rules, needing no citation of authorities to support them. (2). A lien, in its most extensive signification, includes every case in which real or personal property is charged with the payment of any debt or duty.—2 East. 235; 6 *Ib.* 25; 2 Camb. 579; 2 Rose, 357; 1 Dall. 345; 1 Story's Eq. Jur. § 506. (3). The administrator, at common law, had no claim against, or upon the real estate descended to the heir "for the payment of any debt or duty due the ancestor by the heir." The administrator and the heir were perfect strangers. The administrator, the *personal* representative, had possession of the personal estate; the heir had the title and right of possession of the real estate. See 1 Whart. Dig. p. 445; §§ 366–7. (3). The debts due the intestate by the heir, then, if our views of the common law are correct, were upon the same footing, *as far as the heir's real estate* descended was concerned, as

debts due by strangers; and it was the duty of the administrator to proceed against the heir as in the case of other debtors. (4). If then an administrator can claim a charge upon the real estate for a debt due by the heir to the ancestor, the power of doing so must be conferred by our statutes. The statutes give to the administrator the power to rent the real estate (Code, § 2446); to sell the same under the decree of the probate court for the payment of debts (*Ib.* 2447–8); and some other minor powers. (5). Powers are either coupled with an interest, or are collateral and without an interest.—4 Kent's Com. 309; Cruise's Digest, Title 32, Ch. 13, and cases there cited. It seems that the powers conferred upon the administrator by the statutes in question are analogous to the case where a man, at the common law, devises that his executor shall sell his land, which, says Lord COKE, gives no interest to the executors, but is simply a naked power without an interest.—Lit. § 169. Such powers are strictly construed.—*Martin v. Martin*, 43 Barb. (N. Y.), 72; 2 How. Pr. (N. Y.), 385. These statutes are analogous to those in regard to free dealers, enabling the administrator "to do that which, heretofore, he had no power to do." Enabling statutes are strictly construed.—*Dreyfus v. Wolffe*, 65 Ala. 496, and cases there cited. This is manifest when we consider the renting of land of the decedent, and the disposition of the rents. The statute expressly directs that the rents shall become assets.—Code of 1876, § 2446. Without this the rents would have gone to the heir as incident to the reversion. *McCoy v. Scott*, 2 R. 222; 1 Whart. Dig. p. 444, §§ 365–7. (5). The debt in this case can not be construed as an advancement. See *Parker v. McCluer*, 5 Abb. Pr. (N. Y.) 97; S. C. 3 Keys, 318; 36 How. Pr. (N. Y.), 30; *Chase v. Ewing*, 51 Barb. (N. Y.) 597; Story's Eq. Jur. § 1110; 3 Y. & C. 392; 5 M. & C. 29; *Hine v. Hine*, 39 Barb. (N. Y.), 507; *Procter v. Newhall*, 17 Mass. 80, and cases there cited; *Mann v. Mann*, 12 Heisk. (Tenn.) 245; *Johnson v. Hoyle*, 3 Head (Tenn.) 56; *Towles v. Towles*, 1 Head, 601; Maine Dig. §§ 1870–79, p. 23; Bell's Dig. (N. H.) p. 216. (6). It is clear the administrator has a lien upon personal assets for a debt due the ancestor by the heir; and the same is true as to executors and legatees. *Clapp v. Miserole*, 1 Abb. Dec. (N. Y.), 363. And the cases cited by opposite counsel in opposition to the rule that " an administrator can not set off a debt due the ancestor by the heir against the claims of the heir upon the descended realty," are where the administrator or executor set off debts due the deceased by the distributee or legatee, against the distributive share or legacy of such distributee or legatee. (7). But the rule is different as to realty. " In the division of real estate among heirs, no deduction can be made from the share of any one of

them, on account of any debt due from him to the estate."
*Vaden v. Hance*, 1 Head (Tenn.), 301; *Mann v. Mann*, 12
Heisk. (Tenn.), 246; *Procter v. Newhall*, 17 Mass. 81.

STONE, J.—Gideon Nelson died intestate, leaving as his
next of kin, heirs at law and distributees, his two brothers,
John and Jabez C., who, with four others, inherited his estate,
each being entitled to one-sixth part thereof. Gideon's per-
sonal estate was insufficient to pay his debts, and his lands were
sold for that purpose, under an order of court obtained there-
for. His entire landed estate was sold under that order, and
its proceeds, together with the personal assets, paid the debts
and expenses of administration, and left a surplus of fifteen
hundred dollars for division or distribution; that is, two hun-
dred and fifty dollars for each heir or distributee. John and
Jabez C. were each insolvent; and being indebted to their
brother Gideon, he, in his lifetime, obtained a decree against them
for something over twelve hundred dollars. That decree was
wholly unsatisfied and uncollectible at the time of Gideon's death.

Before the death of Gideon Nelson, James T. Murfee, the
appellee, recovered a judgment against John and Jabez C. Nel-
son, for a fraction over one thousand dollars, on which nothing
had been realized. Immediately after Gideon's death, and be-
fore administration had been, or could have been obtained on
his estate, Murfee caused an execution, issued on his judgment,
to be placed in the hands of the sheriff, with instructions to
levy on the interests of John and Jabez C. in the lands de-
scended to them from the estate of their deceased brother,
Gideon. The sheriff failed to make such levy, and returned
said execution no property found. The present is a suit on the
sheriff's bond, prosecuted against the executors of one of his
sureties, and seeks to recover the amount of the execution, on
the alleged ground that, with proper diligence, the sheriff could
have made the money. As to the facts summarized above,
there is no conflict in the testimony.

Under our statutes, as at common law, the title to lands, on the
death of the ancestor, descends immediately to the hier at law,
or next of kin. Unlike the rule of the common law, however,
it does not vest in the heir absolutely, but the descent may be
intercepted, and the possession claimed and held by the per-
sonal representative, for the purposes of administration. In
*Calhoun v Fletcher*, 63 Ala. 574, we discussed the various
powers the personal representative may assert over the realty,
and need not here repeat what we there said. Among the un-
questioned powers conferred upon him, is the right to petition
for and obtain an order to sell the lands of his testator or in-
testate, for the payment of debts. When this right is asserted,

and the lands are sold and conveyed under the order thus obtained, the title to the land which had descended to the heir, is completely devested. And notwithstanding the heir may have sold and conveyed the lands, or they may have been sold and conveyed as his property, the title the personal representative conveys, is not in the least impaired or affected thereby. This is the legitimate effect of our statutory system, which subjects the lands of a decedent to the payment of his debts of every class, when the personal assets are insufficient therefor. Our laws of descent of realty, except as to dower, homestead, and the husband's rights in the statutory separate estate of a deceased, intestate wife, carry the estate to the same persons, and in the same proportions, as the law of distributions carries the personalty.—Code of 1876, §§ 2252, 2261. And lands of a decedent are equally with personal estate chargeable with the debts, except that the personal estate must be first exhausted. Code of 1876, §§ 2429, 2447, As said by Chancellor Kent, Vol. 2, Com. 427, in margin : "In a majority of the States, the descent of real and personal property is to the same persons and in the same proportions, and the regulation is the same in substance as the English statute of distributions, with the exception of the widow, as to the real estate." We need not and do not decide in this case what would be the rights and remedies of the administrator, if the descended lands remained unsold. Whether, when the heir is insolvent and owes the estate of the ancestor, as in this case, the administrator has any prior right to demand payment out of lands descended, or whether it becomes a mere race of diligence between him and other creditors of the heir, is a question not raised by this record. See *Towles v. Towles*, 1 Head, 601 ; *Mann v. Mann*, 12 Heisk. 245 ; *Procter v. Newhall*, 17 Mass. 81 ; *Hancock v. Hubbard*, 19 Pick. 167. While it is manifest the probate court could grant no relief to the administrator in such a case, by reason of its limited, statutory powers, we are not prepared to admit it becomes a mere race of diligence. We, however, leave this question open, as its decision in this case is unnecessary. See *Brown v. Lang*, 14 Ala. 719 ; *Goodman v. Benham*, 16 Ala. 625 ; *Miller v. Irby*, 63 Ala. 477.

As we have said, in the present case it became necessary to sell the lands for the payment of debts, and the lands were so sold, reducing them to money. After paying the debts and the expenses of administration, there remained fifteen hundred dollars for division or distribution among the next of kin; equal to two hundred and fifty dollars to each, or five hundred dollars to the two, John and Jabez C. Nelson. Now, however much money, thus acquired and held, will be treated as having the qualities of land for certain purposes of administration and

succession,—*Teague v. Corbitt*, 57 Ala. 529,—still, for all other purposes, it is only money, and money in the hands of the administrator. Any process or procedure to get it out of the administrator, must necessarily be that which is adapted to the recovery of money as money. It follows that the distributive shares of this sum to which John and Jabez C. Nelson were entitled, was money in the hands of the administrator, and rightfully in his hands by operation of law. Being money in his hands, the question arises, had the administrator the right to retain it, in part payment of the debt the distributees owed his intestate. In Adams' Eq. 223, in margin, it is said : "There are some cases occasionally spoken of as depending on an equitable set-off, but which would be more correctly termed retainers in the nature of set-off. As for example, where a legatee is indebted to his testator's estate, and the executor, instead of paying the legacy, is entitled to balance it against the debt." In Toller on Executors, 338, it is said : "If a legacy be left to the testator's debtor, the debt shall be deducted from the legacy." So, in Waterman on Set-off, § 190, is the following language : "The right of the executor or administrator to retain in such cases, depends upon the principle that the legatee or distributee is not entitled to his legacy or distributive share, while he retains in his own hands a part of the fund out of which that and other legacies or distributive shares ought to be paid, or which were necessary to extinguish other claims on that fund." In *Ranking v. Barnard*, 5 Maddock Ch. Rep. 32, ruled in 1820, the court said : "It is clear that as against the husband, the executors of the testatrix would have had a right to satisfy the legacy, by writing off so much of the debt due from the husband to the estate of the testatrix, and they must have the same right against the assignees of the husband." See, also, *Cherry v. Boultbee*, 4 Myl. & Cr. 442. In *Keim v. Muhlenberg*, 7 Watts, 79, the ruling was that "a legatee, who is indebted to the estate of his testator, is not entitled to recover his legacy, nor that which he holds by assignment in right of another legatee, so long as any part of that debt, equal to the amount of the legacies claimed, remains due and unpaid ; and the assignee of such legatee can be in no better situation than the legatee himself."—*Goodman v. Benham*, 16 Ala. 625 ; *Miller v. Irby*, 63 Ala. 477 ; *Livingston v. Newkirk*, 3 Johns. Ch. 312. We concur in what is said above, and hold that the administrator of Gideon Nelson had a right to retain the money in his hands, to the extent John and Jabez C. owed his intestate ; and he had an equal right to retain, against any transferee of theirs, or a purchaser of their interest at sheriff's sale. Many of the rulings in the court below are opposed to these views.— *Wilson v. Strobach*, 59 Ala. 488.

[Nelson, Ex'r, v. Murfee.]

We have no inclination to disturb the rulings in *Sprowl v. Lawrence*, 33 Ala. 674. See, also, *Tutwiler v. Steele*, 68 Ala. Rep. 107.

Reversed and remanded.